**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHRISTIAN ALFREDO ROMERO-RUIZ,
                  *Petitioner,*

          v.

MICHAEL B. MUKASEY, Attorney
General,

              *Respondent.*

No. 06-74494

Agency No.
A77-436-614

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 17, 2008—San Francisco, California

Filed August 13, 2008

Before: Stephen S. Trott and Sidney R. Thomas,
Circuit Judges, and Michael R. Hogan,* District Judge.

Opinion by Judge Thomas

---

*The Honorable Michael R. Hogan, United States District Judge for the
District of Oregon, sitting by designation.

**COUNSEL**

Vikram K. Badrinath, Vikram Badrinath, P.C., Tucson, Arizona, for the petitioner.

Lauren E. Fascett, United States Department of Justice, Civil Division, Washington, D.C., for the respondent.

## OPINION

THOMAS, Circuit Judge:

This petition for review presents the question of whether an immigrant who did not have lawful permanent resident status at the time of his mother's naturalization is eligible for derivative citizenship. We conclude that he is not, and deny the petition.

I

Christian Romero-Ruiz was born in Mexico in 1981, and entered the United States without admission or parole in 1985. Romero-Ruiz grew up in the United States, attending schools in Tucson, Arizona. In January 1999, while Romero-Ruiz was under the age of eighteen, his mother became a naturalized United States citizen. In March 1999, Romero-Ruiz filed an application for adjustment of status. While his application was pending, he left the United States to visit his grandmother in Mexico. Romero-Ruiz later testified that he understood that he was not supposed to leave the United States while his application was pending. Romero-Ruiz attempted to re-enter the United States in May 2000, and was turned away at the border. He was eventually allowed to re-enter after claiming to be a United States citizen.

In 2001, Romero-Ruiz's application for adjustment of status was denied. The stated reasons were that Romero-Ruiz had abandoned his application by leaving the United States and that he was inadmissible —and therefore ineligible for adjustment of status—for having made a false claim to United States citizenship. Romero-Ruiz was ordered to leave the United States, but failed to do so. In January 2003, he was served with a Notice to Appear, charging him with removability as an alien present in the United States without having been admitted or paroled.

In a 2003 hearing before an immigration judge ("IJ"), Romero-Ruiz denied the allegation that he was not a citizen or national of the United States. He also argued that even if he was not a United States citizen, he should not be found inadmissible for having made a false claim to citizenship because he had reasonably believed that he was a United States citizen. He testified about the bases for this belief, including the assurances of teachers and coaches that his mother's naturalization while he was under the age of eighteen had conferred citizenship upon him. Romero-Ruiz also submitted a new application for adjustment of status, based on his marriage to a United States citizen. In the alternative, he requested voluntary departure. In addition, Romero-Ruiz admitted having been convicted of possession, manufacture, delivery, and advertisement of drug paraphernalia under Arizona Criminal Code § 13-3415, but argued that the conviction had been set aside.

The IJ denied Romero-Ruiz's requests for relief, and ordered him removed to Mexico. The IJ first determined that Romero-Ruiz was ineligible for derivative citizenship because he had not been a legal permanent resident at the time of his mother's naturalization. The IJ then found Romero-Ruiz statutorily ineligible for adjustment of status because he had been convicted of a crime relating to controlled substances, and because he had made a false claim of United States citizenship. The IJ stated that there was no evidence that Romero-Ruiz's application to set aside his conviction had been approved by a judge. The IJ also found that Romero-Ruiz did not fall under the exception to inadmissibility for making a false claim to citizenship because both of his parents were not United States citizens, and because he had applied for adjustment of status after his mother had naturalized, thus indicating that he did not believe her naturalization conferred citizenship upon him. Finally, the IJ determined that Romero-Ruiz did not warrant voluntary departure because of his criminal conviction.

Romero-Ruiz appealed to the BIA. On February 25, 2005, the BIA affirmed the IJ's determination that Romero-Ruiz did not qualify for derivative citizenship because he was not a lawful permanent resident at the time his mother naturalized or thereafter, and the determination that Romero-Ruiz was ineligible for adjustment of status due to his false claim of United States citizenship. The BIA also held that Romero-Ruiz was not entitled to an exception to inadmissibility because his father was not a United States citizen. The BIA mentioned that Romero-Ruiz might also be ineligible for adjustment of status due to his conviction relating to a controlled substance, but noted that the record was unclear as to whether the conviction had been set aside. Finally, the BIA found that the IJ had failed to balance favorable factors against negative factors in analyzing Romero-Ruiz's application for voluntary departure, and remanded the case to the IJ.

Prior to the hearing on the remanded issue, Romero-Ruiz filed a letter with the IJ indicating that he would be seeking cancellation of removal, but he did not file an application for cancellation of removal. On remand, in addition to requesting voluntary departure, Romero-Ruiz again pressed his claim for termination of proceedings based on derivative citizenship and his application for adjustment of status. He did not mention cancellation of removal at the hearing. The IJ granted Romero-Ruiz voluntary departure, but otherwise affirmed the earlier decision denying relief.

Romero-Ruiz again appealed to the BIA. He requested that his case be remanded again because he had become eligible for cancellation of removal, but he did not submit an application for cancellation. He also reasserted his claim that the IJ erred by denying his claim of derivative citizenship and application for adjustment of status. The government filed a motion for summary affirmance, noting that the issues on appeal had already been addressed in the BIA's February 25, 2005 decision.

In August 2006, the BIA dismissed Romero-Ruiz's appeal. The BIA determined that Romero-Ruiz had failed to establish prima facie eligibility for cancellation of removal. Specifically, the BIA determined that Romero-Ruiz was ineligible for cancellation of removal because his conviction under Arizona Criminal Code § 13-3415 was a conviction relating to a controlled substance, and there was no evidence that the conviction had been expunged. The BIA also found that Romero-Ruiz had failed to file an application for cancellation of removal, and failed to request cancellation during his prior remand hearing. Finally, citing its February 25, 2005 decision, the BIA declined to revisit the issues of derivative citizenship and adjustment of status. Romero-Ruiz petitioned for review on September 15, 2006.

## II

Where the BIA conducts an independent review of the IJ's findings, we review the BIA's decision and not that of the IJ. *Hernandez-Guadarrama v. Ashcroft*, 394 F.3d 674, 679 (9th Cir. 2005). We review the BIA's determination of purely legal questions de novo. *De Martinez v. Ashcroft*, 374 F.3d 759, 761 (9th Cir. 2004). We review de novo the legal questions involved in a claim that a person is a national of the United States. *Reyes-Alcaraz v. Ashcroft*, 363 F.3d 937, 939 (9th Cir. 2004). We review factual findings made by the BIA under the deferential substantial evidence standard. *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1102 (9th Cir. 2004).

We review the BIA's denial of a motion to remand for abuse of discretion. *See Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1011 (9th Cir. 2006). The BIA abuses its discretion if its decision is "arbitrary, irrational, or contrary to law." *Lopez-Galarza v. INS*, 99 F.3d 954, 960 (9th Cir. 1996).

## III

[1] The threshold issue in this appeal is one of pure statutory interpretation: whether a petitioner claiming derivative

citizenship need only establish that he was "permanently residing" in the United States during or after his parent's naturalization, or whether he must also establish that he was residing in the United States in some lawful status. We conclude that, in order to obtain the benefits of derivative citizenship, a petitioner must not only establish permanent residence, but also demonstrate that he was residing in some lawful status.

**[2]** "The starting point for any statutory interpretation is the language of the statute itself." *Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir. 2007).[1] Under former 8 U.S.C. § 1432,[2] a child born outside the United States to alien parents becomes a citizen upon the naturalization of the parent having legal custody (where there has been a legal separation of the parents) or the mother (if the child was born out of wedlock) if (1) "such naturalization takes place while such child is under the age of eighteen years," and (2) "such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent . . . or thereafter begins to reside permanently in the United States while under the age of eighteen years." 8 U.S.C. § 1432(a) (repealed 2000).

**[3]** A plain reading of the statute evidences the requirement that the child be residing pursuant to lawful admission either at the time of the parent's naturalization or at some subse-

---

[1]Because the BIA's decision in this case was unpublished, and cites no precedential BIA decision, we do not apply the principles of deference outlined in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1011-13 (9th Cir. 2006). The government did not invoke the lesser form of deference established under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

[2]The parties agree that former 8 U.S.C. § 1432 would apply to Romero-Ruiz's case, as it was the law in effect at the time Romero-Ruiz's mother became a naturalized citizen. *See Minanyan v. Gonzales*, 401 F.3d 1069, 1075 (9th Cir. 2005). The law currently in effect is codified at 8 U.S.C. § 1431.

quent time while under the age of 18. The phrase "or thereafter begins to reside permanently" alters only the *timing* of the residence requirement, not the requirement of *legal* residence.

**[4]** Romero-Ruiz argues that the plain language of the statute demands a different interpretation: that a child otherwise meeting the qualifications becomes a citizen if he is residing in the United States as a legal permanent resident at the time of his parent's naturalization *or* if he is residing permanently in the United States (regardless of legal status) at the time of the naturalization. This interpretation is unreasonable and contrary to the natural reading of the language. To interpret the second clause as conferring derivative citizenship on children who otherwise meet the requirements as long as they are permanently living in the United States would render the first clause — requiring legal permanent residence — superfluous. It is a well-established principle of statutory construction that legislative enactments should not be construed to render their provisions "mere surplusage." *Am. Vantage Cos. v. Table Mountain Rancheria*, 292 F.3d 1091, 1098 (9th Cir. 2002).

**[5]** Applying this interpretation of former § 1432 to Romero-Ruiz's case, we conclude that he fails to qualify for derivative citizenship. Romero-Ruiz was already residing in the United States when his mother naturalized, and was not residing pursuant to a lawful admission for permanent residence. Therefore, he cannot satisfy the residence requirement, and does not qualify for derivative citizenship.

IV

**[6]** Next, we address whether Romero-Ruiz was entitled to a waiver of inadmissibility for the purposes of adjustment of status. In addition to meeting other requirements, a petitioner for adjustment of status must be admissible to the United States for permanent residence. 8 U.S.C. § 1255(a). The BIA determined that Romero-Ruiz was inadmissible because he had made a false claim to United States citizenship and was

ineligible for a statutory exception to inadmissibility. *See* 8 U.S.C. § 1182(a)(6)(C)(ii). The statutory exception provides that:

> [I]f each natural parent of the alien . . . is or was a citizen (whether by birth or naturalization), the alien permanently resided in the United States prior to attaining the age of 16, and the alien reasonably believed at the time of making such representation that he or she was a citizen, the alien shall not be considered to be inadmissible under any provision of the subsection based on such representation.

8 U.S.C. § 1182(a)(6)(C)(ii)(II).

**[7]** For the purposes of this exception, the BIA did not question whether Romero-Ruiz had "permanently resided in the United States," but concluded that because his father "had always lived in Mexico as a Mexican citizen, the requirements for the exception to a false claim for citizenship can not be met, and, as the respondent is inadmissible, he is precluded from adjusting his status." We agree.

Romero-Ruiz argues that the statutory exception should be expanded to include individuals born out of wedlock who reasonably believe they are United States citizens, despite having only one parent who is a United States citizen. Romero-Ruiz argues that the statutory requirement that each parent "is or was" a citizen establishes that the statute does not require both parents to currently *be* citizens. He can point to no statutory or case law, however, that supports a reading of the statute broad enough to include children with one parent who has never been a United States citizen. Accordingly, the BIA correctly determined that Romero-Ruiz is ineligible for the statutory exception, and thus inadmissible and ineligible for adjustment of status. Given this holding, we need not address whether Romero-Ruiz would satisfy the other pre-requisites for adjustment of status.

V

Romero-Ruiz's final argument is that the BIA abused its discretion in denying Romero-Ruiz's motion to remand on the ground that he failed to establish prima facie eligibility for cancellation of removal. The formal requirements of a motion to remand and a motion to reopen are the same. *Rodriguez v. INS*, 841 F.2d 865, 867 (9th Cir. 1987). A motion to reopen is based on factual grounds, and seeks a fresh determination based on newly discovered evidence or a change in the applicant's circumstances since the time of the hearing. *See* 8 U.S.C. § 1229a(c)(7)(B). A petitioner may also move to reopen for the purpose of submitting a new application for relief, provided such motion is accompanied by the proper application for relief and all supporting documentation, and the evidence sought to be offered is material and was not available and could not have been presented at the former hearing. *See* 8 C.F.R. § 1003.2(c)(1).

[8] Romero-Ruiz requested remand—for the purpose of considering whether he was eligible for cancellation of removal—in the opening brief of his second appeal to the BIA, not in an official motion to remand. The BIA correctly treated this request as a motion to reopen. *See Rodriguez*, 841 F.2d at 867. The request for remand was not accompanied by an application for cancellation of removal. In addition, the evidence Romero-Ruiz sought to offer—evidence that his drug paraphernalia conviction had been set aside—had been available as early as October 2003. Under the circumstances present here, the BIA did not abuse its discretion in determining that Romero-Ruiz did not satisfy the procedural requirements for a remand motion.[3]

---

[3]Because we hold that the BIA properly denied Romero-Ruiz's request for remand on the ground that he failed to satisfy the procedural requirements of a motion to reopen, we do not address his argument that the BIA erred by denying remand on the additional ground that his conviction rendered him ineligible for cancellation.

Romero-Ruiz argues that the BIA violated his due process rights by announcing a new procedural rule without notice. That a request for remand may be treated as a motion to reopen has been established in case law, and that a motion to remand requires a completed application for relief has been codified. *See Rodriguez*, 841 F.2d at 867; 8 C.F.R. § 1003.2(c)(1). The BIA did not announce a new procedural rule without notice.

## VI

For the foregoing reasons, we deny Romero-Ruiz's petition for review.

**PETITION DENIED.**