**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAMES MWANGI MURIUKI; ANNA WAMUYU MWANGI, <br><br> Petitioners, <br><br> v. <br><br> ERIC H. HOLDER, Jr., Attorney General, <br><br> Respondent. | No. 06-71754 <br><br> Agency Nos. A095-302-244 <br> A095-302-245 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 7, 2010

Pasadena, California

Before:     WARDLAW and W. FLETCHER, Circuit Judges, and LYNN, [**]
            District Judge.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Barbara M. Lynn, United States District Judge for the Northern District of Texas, sitting by designation.

Petitioners James Mwangi Muriuki and Anna Wamuyu Mwangi petition for review of the Board of Immigration Appeals' ("BIA") March 7, 2006 decision. For the reasons stated below, we grant and remand in each case.

1. James Muriuki

Factual determinations by the BIA are reviewed for "substantial evidence." *Shirazi-Parsa v INS*, 14 F.3d 1424, 1427 (9th Cir. 1994). Where the BIA relies on an adverse credibility finding to deny an asylum application, the BIA must provide a "legitimate articulable basis" for its findings and must offer "a specific, cogent reason for any stated disbelief." *Shah v. INS.*, 220 F.3d 1062, 1067 (9th Cir. 2000) (internal quotation marks and citations omitted). An adverse credibility finding "is improper when an IJ fails to address a petitioner's explanation for a discrepancy or inconsistency." *Kaur v. Ashcroft*, 379 F.3d 876, 887 (9th Cir. 2004).

Here, the IJ and the BIA relied on a number of alleged inconsistencies and implausibilities in Mr. Muriuki's testimony to support the adverse credibility finding, but they failed to address Mr. Muriuki's explanations. For example, the IJ and the BIA found the story of the 1998 attack on Mrs. Mwangi contained internal contradictions because the petitioners alternatively referred to the attackers as "Kalenjin" or "Mungiki." But Mr. Muriuki provided documentary evidence that the Mungiki, though predominantly Kikuyu, include Kalenjin. Further, Mr.

2

Muriuki at no time definitively stated that he was sure the attackers were Kalenjin. Further still, evidence in the record portrays the Mungiki as a cult shrouded in mystery that often acts as a gang for hire regardless of ethnic affinity. The IJ and the BIA failed to address these explanations.

The IJ and the BIA also did not respond to Mr. Muriuki's explanation that he did not simply "see" his lawyer once but rather "retained" him. The IJ and the BIA also failed to address his explanation that the inconsistency in his certificate of service and his oral testimony was "window dressing" the Kenyan government provided to allay donor country concerns. The IJ and the BIA even seemed to have ignored evidence in the record in one instance: both stated that Mr. Muriuki did nothing to protect his children when in fact he stated that he took them to their uncle's house.

In sum, the adverse credibility finding is not supported by substantial evidence in the record. Because the IJ and BIA failed to address many of Mr. Muriuki's explanations for perceived inconsistencies, we remand on an open record for a renewed credibility finding. *See Soto-Olarte,* 555 F.3d 1089, 1096 (9th Cir. 2009). We also remain unsure whether the threats against Mr. Muriuki rise to the level of persecution or, in the alternative, whether the government would be able to rebut his subjective fear of future persecution with objective evidence.

3

Because the IJ and the BIA did not address these issues, we remand to the BIA for further proceedings.

2. Anna Wamuyu Mwangi

Applicants for asylum must file within one year of arriving in the United States. 8 U.S.C. § 1158(a)(2)(B). However, an exception is made for a change in circumstances materially affecting the ability of an applicant to apply for asylum. *Id*. at (a)(2)(D). The implementing regulations provide three examples of "changed circumstances" which include "changes in applicable U.S. law." 8 C.F.R. § 208.4(a)(4)(i)(B). Applicants who file untimely applications based on "changed circumstances" must do so within a reasonable period of time after the changed circumstances. *Id.* at (a)(4)(ii). The regulations do not specify whether "changes in applicable U.S. law" refers only to statutory law or also refers to caselaw.

While Mr. Muriuki and Mrs. Mwangi's cases were on appeal before the BIA, we decided *Mohammed v. Gonzales*, 400 F.3d 785 (9th Cir. 2005). In *Mohammed*, we characterized female genital mutilation ("FGM") as a "permanent and continuing act of persecution" and held that women who suffered FGM in the

past are entitled to an irrebutable presumption that they will be subjected to future persecution. *Id.* at 800-01.

Prior to our decision in *Mohammed*, Mrs. Mwangi's chance of being granted asylum on the basis of FGM was quite uncertain. Until *Mohammed*, some courts and the BIA had limited relief to women who claimed a future fear of FGM. *See, e.g., Abankwah v. INS*, 185 F.3d 18 (2nd Cir. 1999); *In Re Kasinga*, 21 I. & N. Dec. 357 (BIA 1996). Our Circuit had "not yet ruled on whether female genital mutilation rises to the level of persecution." *Mohammed*, 400 F.3d at 796. *Mohammed* changed the legal landscape in two ways. First, it characterized the harm of already-performed FGM as permanent and continuing persecution. *Id.* at 800. Prior caselaw had focused on the actual procedure of FGM, rather than the stigma and lasting physical and psychological impacts, as persecution. *See Kasinga*, 21 I. & N. Dec. at 365. Second, *Mohammed* created an irrebutable presumption that women who suffered already-performed FGM had a well founded fear of future persecution in their home countries. *Mohammed,* 400 F.3d at 801.

Within two months of the *Mohammed* decision, while Mr. Muriuki's appeal to the BIA was pending, Mrs. Mwangi filed a Motion for Remand. (Mrs. Mwangi was a derivative applicant on her husband's application.) In an affidavit accompanying her motion she argued that the *Mohammed* decision was a change in

5

U.S. law materially affecting her ability to apply for asylum, and that her untimely filing should be excused pursuant to 8 U.S.C. § 1158(a)(2)(D) and the implementing regulations at 8 C.F.R. § 208.4(a)(4)(i).  In her brief before the BIA in support of her motion she presented the issue in much the same language.

The BIA did not respond to Mrs. Mwangi's contention.  The BIA incorrectly interpreted her reference to *Mohammed* in her motion as a claim of ineffective assistance of counsel.  By failing to consider the merits of Mrs. Mwangi's argument in her Motion for Remand, the BIA abused its discretion.  *See Romero Ruiz v. Mukasey*, 538 F.3d 1057, 1062 (9th Cir. 2008).  *See also Mohammed*, 400 F.3d at 791 (holding that the BIA abused its discretion in issuing an "incomplete" and "nonsensical" opinion that failed to consider the documentary evidence submitted by the petitioner); *Maravilla v. Ashcroft*, 381 F.3d 855, 858 (9th Cir. 2004) (holding that it was an abuse of discretion for the BIA to fail to consider the merits of a petitioner's claim).  We remand to the BIA to consider in the first instance whether a change in caselaw, such as *Mohammed*, is a change in applicable U.S. law within the meaning of 8 C.F.R. § 208.4(a)(4)(i).

For the foregoing reasons, the petition is granted.  We **REVERSE** and **REMAND** both Mr. Muriuki's and Mrs. Mwangi's petitions.