BEA, Circuit Judge,
with whom O’SCANNLAIN, Circuit Judge, joins, dissenting:
I respectfully dissent from the majority opinion because it usurps the power of the Board of Immigration Appeals (BIA) to determine facts. It does this by reciting, but ultimately departing, from the “substantial evidence” standard which states that agency “findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.” 8 U.S.C. § 1252(b)(4)(B) (emphasis added).[1]
*1078 Here, the BIA found unpersuasive Brin-gas’s evidence of the Mexican government’s inability or unwillingness to control and prevent the abuse of homosexuals. The record evidence — uncorroborated hearsay testimony by Bringas’s Mends that police in Veracruz failed to respond to reports of homosexual abuse; newspaper articles which document an average of fewer than sixty murders per year of homosexuals in Mexico, with no evidence at all regarding how the Mexican government responded to those murders; a single instance of the persecution of a homosexual man by Mexican government officials; and strong evidence of efforts by the Mexican government to protect homosexual citizens — does not compel us to reverse the BIA’s finding.[2] We should deny the petition for review.
To reach its conclusion that the record evidence compels the conclusion that Brin-gas established past persecution, the majority holds that if there is any evidence-including uncorroborated hearsay testimony — that a foreign government is unable or unwilling to control persecution by private, not public, individuals, the administrative trier of fact must disdain evidence to the contrary, and must ignore the alien’s failure to produce any of the agency-requested corroborating evidence, which our immigration law specifically requires.[3] The effect of this new standard: *1079 having carried his burden of presentation of evidence, the alien is discharged from his burden of persuasion.[4] This is not and . cannot be the law.
I.
Carlos Alberto Bringas-Rodriguez is twenty-six years old, homosexual, and a citizen of Mexico. From the ages of four to twelve, Bringas was repeatedly sexually abused by his uncle, cousins, and neighbor in Tres Valles, a town in the Mexican state of Veracruz. At the age of twelve, Bringas moved to Kansas with his stepfather to live with his mother for several months, but within that same year returned to Tres Valles to live with his grandmother. Once back in Tres Valles, the sexual abuse continued. Bringas never reported the abuse to the police. At the age of fourteen, he returned to Kansas with his mother “to escape [his] abusers.” He entered the United States without inspection or authorization.
Six years later, at the age of twenty and while living in Colorado, Bringas pleaded guilty to and was convicted of attempted “Contributing to the Delinquency of a Minor.”[5] Shortly thereafter, immigration authorities issued him a Notice to Appear. Bringas conceded removability but requested asylum, withholding of removal, and relief under the Convention Against Torture (CAT). He claimed that he had suffered sexual abuse as a minor and that this abuse amounted to past persecution on account of his sexual orientation.
The IJ denied Bringas’s asylum claim because it was untimely filed. With respect to withholding of removal, the IJ found Bringas credible but ruled that Bringas had not established past persecution on account of a protected ground for two reasons: (1) The evidence established that the “central reasons for the abuse were the perverse sexual urges of the abusers,” not Bringas’s sexual orientation, and (2) there was no evidence that the police in Mexico would not have protected Bringas “from the sexual abuse perpetrated upon him as a child.” As to Bringas’s fear of future persecution, the IJ noted that country reports included a few instances of persecution of homosexuals in Mexico, but not any “pattern or practice” of government participation or acquiescence in such persecution. Moreover, the country reports showed that the country as a whole — and Mexico City in particular — had made significant advances with respect to rights for homosexuals, such that Bringas could potentially relocate to a part of the country *1080 where he would be safe. The IJ also denied relief under the CAT on the grounds that Bringas offered insufficient evidence that “torture in the future by the government, or with the acquiescence of the government” was more likely than not.
The BIA dismissed Bringas’s appeal. The BIA denied Bringas’s asylum claim on the merits, assuming arguendo that the application was timely filed. The BIA concluded that Bringas failed to establish past persecution because he had not proved that the government was unable or unwilling to control his abusers, avoiding the question whether Bringas established that he was abused because he was homosexual. The BIA also found that Bringas did not have a well-founded fear of future persecution because he failed to prove a “pattern or practice” of persecution against homosexuals in Mexico. Citing this court’s opinion in Castro-Martinez v. Holder, 674 F.3d 1073, 1082 (9th Cir. 2011), and comparing the experience of homosexual men in Mexico to the experience of homosexual men in Jamaica,[6] the BIA explained that no “widespread brutality against homosexuals or ... criminalization of homosexual conduct [exists] in Mexico.” With respect to withholding of removal, because Bringas failed to satisfy the lower burden of proof required for asylum, the BIA found that he failed to satisfy the higher standard for withholding of removal. With respect to CAT relief, the BIA found no clear error in the IJ’s determination that Bringas failed to prove that torture by or with the acquiescence of the Mexican government was more likely than not.
Finally, the BIA rejected Bringas’s request to remand his ease to the IJ in light of Bringas’s recent HIV diagnosis. Brin-gas’s brief to the BIA explained his recent diagnosis and argued that “this fact is significant because it now places [him] in a more vulnerable position should he be returned to Mexico.” The BIA declined to remand Bringas’s case for further consideration because Bringas had not provided any additional country conditions evidence or specific arguments regarding how his status as an HIV positive homosexual would change the outcome of his case.
Bringas petitioned this court for review of the BIA’s decision. The three-judge panel denied Bringas’s petition for review. The panel first noted that it could not “resolve Bringas’s asylum claim on timeliness grounds because the BIA ignored this procedural defect .... ” Bringas-Rodriguez v. Lynch, 805 F.3d 1171, 1177 (9th Cir. 2015) (now withdrawn); see also Abebe v. Gonzales, 432 F.3d 1037, 1041 (9th Cir. 2005) (en banc) (“When the BIA has ignored a procedural defect and elected to consider an issue on its substantive merits, we cannot then decline to consider the issue based upon this procedural defect.”). In reviewing Bringas’s asylum claim on the merits, the panel concluded the evidence did not compel reversal of the BIA’s determination that Bringas failed to establish past persecution or a well-founded fear of future persecution. Bringas-Rodriguez, 805 F.3d at 1177. The panel followed the BIA and analyzed only whether Bringas failed to establish that his abuse was inflicted by individuals the government was unable or unwilling to control, thereby *1081 avoiding the question whether Bringas suffered abuse because he is homosexual. Id. at 1177-78.
The panel agreed with the IJ and BIA that Bringas failed to establish that the Mexican government was unable or unwilling to control his abusers, and therefore failed to establish past persecution. Id. at 1178. The country reports and hearsay evidence introduced by Bringas did not sufficiently close the gap in proof as to how the government would have responded to reports of his abuse, had such reports been made. Id. at 1180-82. With respect to the country conditions evidence, the panel stated that the country reports noted no instances of discrimination or persecution in Veracruz and “only one specific example of government persecution on the basis of sexual orientation in Mexico.” Id. at 1179. The panel highlighted portions of the reports describing “gay pride” marches across Mexico as well as a Mexican Supreme Court decision “requiring Mexico’s states to recognize legally performed [same-sex] marriages performed elsewhere,” a decision that was made five years before the United States Supreme Court reached a similar conclusion. Id. Turning to Bringas’s testimony about his friends’ experiences in Veracruz, the panel first recognized that Bringas credibly testified that a “couple” of his friends told him “that they got raped, they got beat up, like abuse, and they went to the police [in Veracruz, Mexico] and they didn’t do anything” except “laugh [in] their faces.” Id. at 1178. Nonetheless, the panel concluded that the lack of corroborating details about Bringas’s friends’ experiences — including the names of his friends, how old they were when they were abused and when they reported their abuse, by whom they were abused, to whom they reported their abuse, or where the abuse occurred — -justified the BIA’s conclusion that Bringas failed to establish that the government would be unable or unwilling to control his abusers.[7] Id. at 1180. The panel therefore held that Bringas was not entitled to a presumption of a well-founded fear of persecution. Id. at 1182.
The panel also concluded that Bringas’s evidence supported the BIA’s conclusion that Bringas failed to establish a well-founded fear of future persecution. Id. The panel recognized two avenues for Bringas to establish an objectively reasonable fear of future persecution: (1) that he was a member of a disfavored group against which there was a systematic pattern or practice of persecution, or (2) that he belongs to a disfavored group and has an individualized risk of being singled out for persecution. Id. Bringas forfeited the second argument by failing to raise it before the BIA. Therefore, the panel focused only on whether Bringas established a pattern or practice of persecution of homosexual men in Mexico. Id. The panel concluded that Bringas adduced no evidence establishing a change of conditions in Mexico since the court decided Castro-Martinez v. Holder, 674 F.3d 1073, 1082 (9th Cir. 2011).[8] Therefore, the panel held that substantial evidence supported the BIA’s finding of no pattern or practice of persecution. Bringas-Rodriguez, 805 F.3d at 1183.
*1082 With respect to Bringas’s CAT claim, the panel held that the same evidence that supported the BIA’s dismissal of the pattern-or-practice claim also supported the IJ and BIA’s conclusion that Bringas failed to establish a likelihood of torture. Id. at 1184. As the panel stated, conditions in Mexico are “insufficiently dangerous for gay people to constitute a likelihood of government-initiated or -sanctioned torture.” Id.; Castro-Martinez, 674 F.3d at 1082. The panel noted that the likelihood of future torture was especially low given that Bringas is now a “selfsufficient [sic] homosexual adult” who could “relocate to a different part of Mexico.” Bringas-Rodriguez, 805 F.3d at 1184.
Finally, the panel held that the BIA did not abuse its discretion in declining to remand based on Bringas’s HIV diagnosis. According to the panel, the BIA offered a reasoned explanation that was neither arbitrary nor irrational: Bringas did not provide “any additional country conditions evidence or specific arguments regarding how his [HIV] status changes the outcome of his case.” Id. at 1185.
Bringas filed a petition for rehearing en banc, which we granted. A majority of the en banc panel today overrules several of our prior immigration cases in two respects, but only by misreading those cases. First, the majority holds that Rahimzadeh and Afriyie “unnecessarily introduced the construct'that the failure to report [private persecution to government authorities] creates a ‘gap’ in the evidence, because our law is clear that the agency, and we, upon review, must examine all the evidence in the record that bears on the question of whether the government is unable or unwilling to control a private persecutor.”[9] Op. at 1069. The majority overrules Ra-himzadeh and Afriyie “[t]o the extent that [the] discussion of gap filling suggested that the burden of proof on governmental inability or unwillingness to protect was something beyond the standard we use for other elements — proof by a preponderance of the evidence, considering all the evidence in the record.” Op. at 1069-70. However, neither case held that any “gap” created by the failure to report could not be filled by other evidence. At most, the “gap” language commented on the lack of one kind of evidence, which could be supplanted by another kind of evidence. It did not increase the evidentiary burden on the petitioner. For instance, there is no “gap” in establishing the date of a fire loss when the homeowner does not file a report with the Fire Department, if he produces a date-stamped video of his house burning. Similarly, there is no “gap” when an asylum petitioner does not report his persecution by private individuals to government officials, if he produces alternative, compelling evidence that the foreign government at issue is unable or unwilling to control his persecutors.
Second, the majority overrules Castro-Martinez because, in that case, “[w]e imposed a higher burden [on Castro, who was persecuted by private individuals as a child] that required Castro to demonstrate that ‘Mexican authorities would have ignored the rape of a young child or that authorities were unable to provide a child protection against rape.’ ” Op. at 1070 (citing Castro-Martinez, 674 F.3d at 1081). The majority holds that this language effectively imposed “a reporting requirement on sexually abused children: either the petitioner must have reported in his own cáse, or other children must have reported to create the basis for a country report on *1083 the general response.” Op. at 1072. However, Castro-Martinez stated unequivocally that asylum petitioners, especially children, need not report their abuse to establish past persecution. See Castro-Martinez, 674 F.3d at 1081 (“We have never held that any victim, let alone a child, is obligated to report a sexual assault to the authorities, and we do not do so now.”). Instead of accurately reading Castro-Martinez, which needed no clarification with respect to whether a reporting requirement exists for asylum petitioners of any age, the majority removes the requirement imposed by the Supreme Court and Congress on asylum petitioners to produce evidence sufficient to compel the conclusion that the foreign government was unable or unwilling to protect against private persecution. I address the majority’s two issues in turn.
II.
A The majority rejects our substantial evidence standard by holding that merely proffering traditional “types of proof’ categorically suffices to establish an “unable or unwilling” claim.
The majority takes issue with the commonsense conclusion reached in Rahimza-dek and Afriyie that a petitioner who, does not report his private persecution to government officials leaves an evidentiary “gap” regarding how those officials would react to such a report.[10] The majority “supersedes” Rahimzadeh and Afriyie because “[fjraming the question of nonre-porting as a ‘failure’ that creates an evi-dentiary ‘gap’ had the inadvertent effect of heightening the evidentiary standard beyond the traditional types of proof, accepted in every prior precedent, that we have deemed sufficient to demonstrate governmental inability or unwillingness to protect victims of persecution.” Op. at 1069 (emphasis added).
The assertion that Rahimzadeh and Af-riyie created a heightened evidentiary standard for petitioners who fail to report their private persecution to government authorities ignores clear language to the contrary from both opinions. Rahimzadeh and Afriyie made clear that reporting private persecution to government authorities is not required to establish past persecution.[11] Rahimzadeh and Afriyie also provided clear guidance regarding how evidence other than reports to the police can compel the conclusion that government officials were unable or unwilling to protect *1084 petitioners from private persecution.[12] The language from those opinions needed no further clarification.
But the majority does not overrule those cases in an attempt to clarify how this court reviews evidence of past persecution. Instead, the majority recites, yet ignores the standard of review for past persecution claims involving private persecutors.[13] The majority holds that “[f]raming the question of nonreporting as a ‘failure’ that creates an evidentiary ‘gap’ had the inadvertent effect of heightening the evidentiary standard beyond the traditional types of proof, accepted in every prior precedent, that we have deemed sufficient to demonstrate governmental inability or unwillingness to protect victims of persecution.” Op. at 1069 (emphasis added). Neither we, nor any other court, has accepted the notion that presentation of a type of proof used in other cases, regardless of its probative value, is categorically sufficient to establish that government officials were unable or unwilling to control private persecution. The nature and quality of the evidence adduced always mattered. However, under the majority’s view, the probative value of that proof becomes irrelevant when petitioners provide a “type[ ] of proof, accepted in every prior precedent, that we have deemed sufficient to demonstrate governmental inability or unwillingness to protect victims of persecution.” Op. at 1069 (emphases added). The majority ignores that an inadequate response by government officials to a petitioner’s direct report of private persecution will sometimes provide stronger evidence that government officials are unable or unwilling to protect against private persecution than other types of evidence. Our prior cases recognized this uncontroversial statement regarding the nature of evidence. See, e.g., Afriyie, 613 F.3d at 931 (“[W]hen an applicant attempts to report persecution to the police or request protection from them, the authorities’ response (or lack thereof) to such requests may provide powerful evidence with respect to the government’s willingness or ability to protect the re-questor.” (emphasis added)). Rahimzadeh and Afriyie did not create a heightened evidentiary burden for petitioners who do not report their persecution. Those cases simply recognized that a petitioner’s direct report to government officials, followed by an inadequate or nonexistent response by those officials, provides “powerful” proof that indirect, vague, or hearsay evidence may lack. My colleagues fundamentally alter our longstanding substantial evidence standard of review by suggesting that evidence other than a failure to report persecution to the police — such as Bringas’s *1085 hearsay testimony from Mends — categorically suffices to constitute compelling evidence that government officials are unable or unwilling to control persecution by private, nongovernmental individuals.

B. The majority sets aside substantial evidence review by excusing adult petitioners who were persecuted as children from adducing sufficient, alternative evidence that the government was unable or unwilling to protect them.

My colleagues take issue with the following language in Castro-Martinez:
As the BIA observed, there was no evidence in the record that Mexican authorities would have ignored the rape of a young child or that authorities were unable to provide a child protection against rape. ... [N]one of [the] reports compel the conclusion that the police would have disregarded or harmed a male child who reported being the victim of homosexual rape by another male.
Castro-Martinez, 674 F.3d at 1081. According to my colleagues, this language effectively requires child victims of private persecution to report their abuse to the authorities based on the following reasoning:
[C]hildren who suffer sexual abuse are generally unlikely to report that abuse to authorities. Because they are unlikely to report, it is similarly unlikely that country reports or other evidence will be able to document the police response, or lack thereof, to the sexual abuse of children. ... That added burden was inappropriate, both because it reflected a heightened gap-filling proof requirement and because it focused on evidence regarding the treatment of gay children rather than the treatment of gay Mexicans generally.
Op. at 1071-72 (emphasis added). Castro-Martinez addressed this exact issue: whether the victim’s report of the abuse to the police was a requirement, else an evi-dentiary gap would make the rest of the victim’s proof insufficient, and whether this requirement obtained only as to homosexual children. See Castro-Martinez, 674 F.3d at 1081 (“We have never held that any victim, let alone a child, is obligated to report a sexual assault to the authorities, and we do not do so now.”). Castro-Martinez ’s express language does not permit of a reading that a reporting requirement exists for persecuted children and only for such children rather than similar adults. Nonetheless, the majority concludes that Castro-Martinez created a reporting requirement for persecuted children.
The majority is undoubtedly correct that children who suffer sexual abuse are unlikely to report their abuse to government officials of their own accord. The fact that victims of private persecution — young or old — are unlikely to report their abuse to authorities explains why we have never held that victims of private persecution need to report their abuse to establish past persecution for asylum purposes. See, e.g., Rahimzadeh, 613 F.3d at 922 (“None of [the immigration cases surveyed], or any other we have found, creates a freestanding reporting requirement to qualify for asylum.”). But the majority goes much further than restating that child victims of private persecution, like all victims of private persecution, need not report their persecution to the authorities. The majority concludes that, because children are unlikely to report, “it is similarly unlikely that country reports or other evidence will be able to document the police response, or lack thereof, to the sexual abuse of children.” Op. at 1071 (emphasis added). In other words, this court should excuse the absence of any “country report[ ] or other evidence” that government officials were unable or unwilling to protect adult peti *1086 tioners who suffered persecution as a child because children are unlikely to report their private persecution to the authorities.
The majority fails to explain why adults who suffer private persecution at the hands of their family, neighbors, or community are any less likely to report their private persecution to government authorities, and thus less deserving of the majority’s lack-of-evidence-be-damned approach. We do not require victims of private persecution to report to government authorities to establish past persecution for asylum purposes because, no matter their age, victims are unlikely to report private persecution given that reporting may be futile or dangerous. See Afriyie, 613 F.3d at 931. Nonetheless, our nation’s immigration law still requires asylum petitioners to adduce sufficient evidence other than their or others’ reports to governmental authorities to prove that those authorities were unable or unwilling to protect asylum petitioners from private persecution. The majority dismisses that requirement for a petitioner who experienced persecution when he was a child — even though the petitioner, as an adult, can reasonably identify other documentary, anecdotal, or statistical evidence to support his “unable or unwilling” claim — because the petitioner was unlikely to report his persecution when he was a child. But adult petitioners are also unlikely to report their private persecution to authorities, and thus similarly unlikely to obtain “country reports or other evidence” documenting the “police response, or lack thereof’ to reports of private persecution. I fear our court will soon excuse the absence of “country reports or other evidence” from asylum petitioners who experienced private persecution as adults under the same reasoning adopted by the majority today. We lack the authority to make such a dramatic shift in our nation’s immigration and asylum law. If there is to be a relaxing of our asylum requirements for victims of private persecution, the authority lies with Congress, not this court, to enact it.
III.
Bringas’s evidence does not compel the conclusion that Mexican authorities were unable or unwilling to control Bringas’s private persecutors. After reciting, but then lowering our standard of review beyond the bounds set by the Supreme Court in Elias-Zacarias and Congress in 8 U.S.C. 1252(b)(4)(B), the majority easily reaches the conclusion that Bringas adduced evidence sufficient to compel the conclusion that Mexican authorities were unable or unwilling to protect him. The majority reaches this conclusion by comparing Bringas’s evidence to the evidence presented in other cases in our circuit involving petitioners who suffered private persecution and never reported their persecution to the authorities. Op. at 1064-69. However, a careful review of the evidence presented in those cases explains why the nature and quality of the evidence adduced by Bringas does not come close to compelling the conclusion reached by the majority.[14] Compared to the evidence in *1087 our prior cases, Bringas’s evidence included only vague, unspecific hearsay testimony describing his friend[s]’ experiences with the police in Veracruz,[15] newspaper articles which documented isolated incidents of private discrimination and persecution against homosexual individuals in Mexico,[16] and a single instance of persecution against a homosexual man by Mexican officials.[17] Our prior cases involving private *1088 persecution explain why I cannot join the majority in holding that the evidence here compels the conclusion that Mexican authorities were unable or unwilling to protect Bringas. We have never reached such a conclusion on evidence as weak as that which Bringas presents.
But the majority does not err only by overweighing Bringas’s scant evidence that the Mexican authorities were unable or unwilling to protect him. The majority also undervalues evidence of social progress in Mexico regarding rights for homosexual individuals in a manner that defies logic. The majority first summarizes the relevant evidence of social progress in Mexico identified by the panel in Bringas-Rodriguez v. Lynch, 805 F.3d 1171 (9th Cir. 2015) (now withdrawn):
[T]he [three-judge] panel majority found that the country reports demonstrated that Mexico permitted gay pride marches and had expanded marriage equality. The panel majority also cited a United Nations report stating that Mexico had established a “ ‘specialized hate crime prosecution unit[],’ developed a ‘new judicial protocol to guide adjudication of cases involving human rights violations on grounds of sexual orientation,’ implemented specialized training for police officers, and officially designated May 17 as ‘National Day Against Homophobia.’ ”
Op. at 1058 (internal citations omitted). The majority holds that, despite this evidence of progress, as countries like Mexico successfully improve conditions for particular social groups eligible for asylum, any private backlash that results from such government-sponsored improvements should be interpreted by this court as evidence that the foreign government is in fact “unable or unwilling” to protect that particular social group. See Op. at 1057 (“The reports showed that the violence rose even as — and perhaps because — Mexican laws were becoming increasingly tolerant of gay rights.”). In other words, as countries become more able and willing to protect a particular social group, the trier of fact must disregard that evidence of social progress and conclude that countries are in fact less able and willing to protect particular social groups when isolated incidents of private persecution occur. The majority does not provide any limiting principle regarding when our court should begin to accept evidence of the significant progress of foreign countries in protecting its most vulnerable citizens, or explain why evidence of an average of less than 60 homophobia-motivated murders a year committed by private actors in Mexico between 2001 and 2009 permits a conclusion that the Mexican government, overseeing a country of more than 120 million people, is unable or unwilling to protect its homosexual citizens.[18]
The majority alternatively sets aside the evidence of Mexico’s social progress advancing the rights of homosexuals because the evidence reflects changes made after the period during which Bringas was abused, which ended in 2004. Op. at 1075- *1089 76. Of course, the same can be said about most of the evidence Bringas relies on to support his claim that Mexican police were unable or unwilling to protect him before 2004. The country reports are from 2009 and 2010. The single example of police violence against a homosexual man occurred in 2008. The newspaper articles were published in 2010. Using the majority’s reasoning, the only relevant evidence adduced by Bringas was hearsay testimony regarding his homosexual friend[s]’ experiences with the police in Mexico, and a single article documenting the number of murders committed by private actors each year between 1995 and 2009 that were motivated by homophobia, with no discussion whatsoever of how Mexican police responded to those private acts. Even under the relaxed standard of review adopted today, Bringas’s evidence does not compel the conclusion reached by the majority.
IV.
Even if I agreed with the majority that the evidence here compelled the conclusion that Bringas suffered past persecution, I would still dissent on the basis that the past persecution purportedly established here does not entitle Bringas to a presumption of a well-founded fear of future persecution. 8 C.F.R. § 1208.13(a)(1) states, in relevant part, that “[i]f the applicant’s fear of future persecution is unrelated to the past persecution, the applicant bears the burden of establishing that the fear is well-founded.” (emphasis added). The majority responds by noting that Bringas’s fear of future persecution on account of his sexual orientation is clearly related to his past persecution on account of his sexual orientation. But the only private persecution Bringas ever experienced in Mexico on account of his sexual orientation was when he was a child to age fourteen, and at the hands of his uncle, cousins, and neighbor,- all of whom lived (and presumably still live) in Tres Valles, Veracruz, Mexico. Given the isolated location of Bringas’s abuse, and given the fact that Bringas is no longer a child subject to the oversight and control of his family and neighbors in Tres Valles, I would hold that Bringas’s past persecution is unrelated within the meaning of 8 C.F.R. § 1208.13(a)(1), and does not entitle him to the presumption of a well-founded fear of future persecution. I would further deny Bringas’s petition for review because he has not carried his burden to establish that the evidence compels a finding of a well-founded fear of future persecution, as explained in the well-reasoned opinion of the three-judge panel. See Bringas-Rodriguez, 805 F.3d 1171, 1182-84 (9th Cir. 2015) (now withdrawn).[19]
Assuming, as the majority does, that Bringas’s past persecution entitles him to a presumption of a well-founded fear of future persecution, the majority acted cor *1090 rectly in remanding to the agency “for consideration in the first instance of whether the presumption [of a well-founded fear of future persecution] has been rebutted.” Op. at 1076. See INS v. Orlando Ventura, 537 U.S. 12, 16-17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002). On remand, the agency may well conclude that Mexico’s significant progress regarding rights for homosexuals constitute changed conditions sufficient to rebut the presumption of a well-founded fear of future persecution. See 8 C.F.R. § 1208.13(b)(1)(A) (stating that a “fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant’s country of nationality” may rebut the presumption of a well-founded fear of future persecution). Or the agency may conclude that Bringas, now a financially self-sufficient adult, who has been employed in the United States not only in entry-level positions in the food service industry, but in at least one supervisory position, can reasonably and safely relocate to a new area within Mexico, such as Mexico City, where he would be safe from the only private individuals in Mexico who have ever persecuted him on account of his sexual orientation. Id. § 1208.13(b)(l)(i)(B). Assuming arguendo that Bringas’s past persecution entitles him to the presumption of a well-founded fear of future persecution, however, I agree with the majority that we must leave these questions to the agency in the first instance on remand.[20]
V.
Despite my colleagues’ faithful recitation of the proper standard of review, they effectively replace it with a much lower standard in violation of Supreme Court precedent and our nation’s immigration law. Therefore, I respectfully dissent.

. See Lianhua Jiang v. Holder, 754 F.3d 733, 740 (9th Cir. 2014) ("Given the extremely deferential [substantial evidence] standard of review, anything approaching a de novo review is improper.”); Cole v. Holder, 659 F.3d 762, 780 (9th Cir. 2011) ("We have held that '[t]his strict [substantial evidence] standard bars the reviewing court from independently weighing the evidence and holding that the petitioner is eligible for asylum, except in cases where compelling evidence is shown.' Kotasz v. INS, 31 F.3d 847, 851 (9th Cir. 1994). 'We are not free to look anew at the testimony and then measure the soundness of the agency's decision by what we would have found. Nor does evidence compel the opposite conclusion just because it would also support a different result. Donchev v. Mukasey, 553 F.3d 1206, 1213 (9th Cir. 2009).”); Quan v. Gonzales, 428 F.3d 883, 890-91 (9th Cir. 2005) (O'Scannlain, J., dissenting) ("[W]e must accept the IJ's finding of fact unless the *1078 evidence compels a contrary conclusion. This is an extremely deferential standard óf review: it is not enough that the evidence supports a contrary conclusion, that the panel would have weighed the evidence differently, or even that the panel is persuaded that the finding is incorrect; the evidence must be so overwhelming that not just the panel but ‘any reasonable adjudicator would be compelled to conclude the contrary.’ The law and the Supreme Court are unequivocal on this point.” (internal citations omitted)).

. See INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) ("To reverse the BIA finding we must find that the evidence not only supports that conclusion, but compels it — and also compels the further conclusion that [the petitioner] had a well-founded fear that the guerrillas would persecute him because of that political opinion.” (emphases in original)).

. See 8 U.S.C. § 1158(b)(1 )(B)(i)-(U) ("The burden of proof is on the applicant to establish that the applicant is a refugee .... Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be corroborated unless the applicant does not have the evidence and cannot reasonably obtain the evidence.”). The Immigration Judge (IJ) asked Bringas's counsel for corroborating details to support Bringas's claim that the Mexican government was unable or unwilling to control Bringas’s private persecutors, and even granted Bringas a 120-day extension to provide such corroborating details. During one of the hearings before the IJ, the IJ made the following comments to Bringas’s attorney: "If I were an attorney, I’d go for the corroboration because, I mean, to me, it’s a lot more important to make sure your case is presented with all the adequate proof, rather than risk that in order to see if you are able to beat the clock and get a work card.” Bringas’s attorney at the IJ hearing responded with the following: "Well, let’s just go ahead’ and set it over so that we can provide corroborating evidence. I don't know how successful we’re going to be, that’s the only problem.” Indeed, even after the 120-day extension provided by the IJ, Bringas did not supplement the hearsay testimony of his friend or friends — which was the core of his claim of governmental lassitude before, or contempt to, pleas for government help — with any affidavits from his friends or corroborating details through his testimony, nor with any proofs that he could not “reasonably obtain” the evidence. The evidence the majority points to as corroborating evidence to refute this dissent has nothing to do with the corroboration actually requested by the IJ, under 8 U.S.C. § 1158(b)(l)(B)(ii). The IJ required evidence to corroborate Bringas’s claim the Mexican government was unable or unwilling to control Bringas's private persecutors. The State Department 2010 Country Report is silent on that score, as are the newspaper articles. They *1079 contain reports of incidents, but say nothing about the Mexican government's involvement or reaction to those incidents. Of course, the psychological evaluation of Bringas quite properly tells us about him and his claims, but tells us nothing to corroborate his claims of Mexican government involvement or reaction to incidents of persecution committed by other persons.

. See 8 U.S.C. § 1158(b)(l)(B)(ii) ("The testimony of the [asylum] applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate the applicant is a refugee." (emphases added)); Mejia-Paiz v. INS, 111 F.3d 720, 722 (9th Cir. 1997) ("[T]he petitioner bears the burden of persuading the IJ that his evidence is credible, and the IJ is entitled to evaluate assertions of pasq persecution in light 'of the strength or weakness of such other evidence as the petitioner may present.” (internal citations omitted)).

. Colo. Rev. Stat. § 18-6-701 ("(1) Any person who induces, aids, or encourages a child to violate any federal or state law, municipal or county ordinance, or court order commits contributing to the delinquency of a minor. For the purposes of this section, the term ‘child’ means any person under the age of eighteen yéars. (2) Contributing to the delinquency of a minor is a class 4 felony.”).

. In Bromfield v. Mukasey, 543 F.3d 1071, 1078 (9th Cir. 2008), the Ninth Circuit granted a petition for review and remanded after finding a pattern or practice of persecution of homosexual men in Jamaica. The evidence compelled such a finding based on a culture of severe discrimination against homosexuals, numerous cases of violence against persons based on their sexual orientation by police and vigilante groups, brutality against homosexuals, as well as Jamaican law criminalizing homosexual conduct, resulting in several prosecutions.

. These details were requested of Bringas’s counsel, together with a provision of time for their production. See supra note 3.

. In Castro-Martinez, this court rejected the claim that "the Mexican government systematically harmed gay men and failed to protect them from violence.” 674 F.3d at 1082. Although the court acknowledged evidence of societal discrimination and isolated attacks, as to the required element of governmental lassitude or incapacity, it explained that “the Mexican government’s efforts to prevent violence and discrimination against homosexuals ... ha[d] increased in recent years.” Id.

. Rahimzadeh v. Holder, 613 F.3d 916 (9th Cir. 2010); Afriyie v. Holder, 613 F.3d 924 (9th Cir. 2010).

. See Rahimzadeh, 613 F.3d at 922 ("The absence of a report to police does not reveal anything about a government’s ability or willingness to control private attackers; instead, it leaves a gap in proof about how the government would respond if asked, which the petitioner may attempt to fill by other methods.”); Afriyie, 613 F.3d at 931 (" TT]he absence of a report to police ... leaves a gap in proof about how the government would respond, which the petitioner may attempt to fill by other methods.’ ” (quoting Rahimzadeh, 613 F.3d at 922)). Recognizing that a “gap” exists is not to make it determinant or change the standard of proof which requires all evidence on the matter to be considered. See Vitug v. Holder, 723 F.3d 1056, 1064 (9th Cir. 2013) ("[T]he BIA abuses its discretion where it ignores arguments or evidence.”).

. See Rahimzadeh, 613 F.3d at 921 (“The reporting of private persecution to the authorities is not, however, an essential requirement for establishing government unwillingness or inability to control attackers.”); id. at 922 (”[I]t is clear that the IJ treated the failure to report as merely one factor in the assessment of the Dutch government’s willingness and ability to control private extremists, not as a per se bar to asylum.”); Afriyie, 613 F.3d at 931 ("We begin by noting that reporting persecution to government authorities is not essential to demonstrating that the government is unable or unwilling to protect him from private actors.”).

. In Rahimzadeh and Afriyie, we explained that petitioners who do not report their private persecution to government authorities can establish that government authorities were unable or unwilling to protect them through several evidentiary channels. For example, petitioners could establish that others have made reports of similar incidents to no avail — as Bringas did here in proffering the hearsay statements of his friends as to their insouciant and contemptuous reception by the Mexican police, see Afriyie, 613 F.3d at 932-33, or that “private persecution of a particular sort is widespread and well-known but not controlled by the government.” Rahimzadeh, 613 F.3d at 922. .

. The majority characterizes its opinion as merely clarifying that "the legal standard, substantial evidence, is not heightened or made more stringent when the persecution is directed to a child, as opposed to an adult ....” Op. at 1070, n.ll. But the majority does not apply the true substantial evidence test to either children or adult petitioners. On this point, the concurrence agrees. See Concurring Op. at 1076 ("In my view, the majority opinion does not respect the proper standard for our court's review of an order of removal. That standard is supposed to be highly deferential, and I agree with the dissent that it has not been applied that way in this case.”).

. See Korablina v. INS, 158 F.3d 1038, 1042 (9th Cir. 1998) (granting the petition for review based on evidence that the petitioner witnessed the beating of her Jewish boss, whose beating was reported to the police to no avail, and reported the beating to a friend at the municipal city hall, who soon thereafter "disappeared”); Ornelas-Chavez v. Gonzales, 458 F.3d 1052, 1057 (9th Cir. 2006) (granting in part the petition for review based on credible testimony that (1) the petitioner was personally mistreated and harassed by police officers, who jailed him and threatened to do so again if he continued dating men, and (2) police officers brutally maimed and killed the petitioner’s gay friends); Afriyie, 613 F.3d at 928-29 (9th Cir. 2010) (granting in part the petition for review based on credible testimo *1087 ny that (1) the petitioner and others reported to the police, to no avail, the petitioner’s beating by private actors, the murder of members of his religious group by private actors, and the murder of the petitioner’s sister and destruction of her home, and (2) the police had only one gun, at the police station with which to protect the petitioner’s religious group); Vitug, 723 F.3d at 1064 (9th Cir. 2013) (granting in part the petition for review based on evidence that the petitioner was personally harassed and threatened by police officers on account of his sexual orientation).

.Bringas gave the following credible, hearsay testimony: ”[W]hen I was living in Kansas, couple of my friends told me that they got raped, they got beat up, like abuse, and they went to the police [in Mexico] and they didn’t do anything. They even laugh on [sic] their faces.” Bringas also stated the following in his asylum application: "If I went to the police [in Mexico] they wouldn’t do anything. They will take a report and never follow-up on it or they would simply laugh at me and tell me that I got what I deserved because I am gay. My gay friend from Veracruz living in Kansas City told me this is what happened to him.” Bringas presented inconsistent statements regarding whether a single "friend” or multiple “friends” reported to the Mexican police they had been victims of abuse, all to no avail. Credible hearsay evidence, such as Bringas’s friends’ statements, may be admissible in immigration proceedings. Rojas-Garcia v. Ashcroft, 339 F.3d 814, 823 (9th Cir. 2003). The majority places great weight on the fact that "Bringas’s testimony was sufficiently specific to be deemed credible.” Op. at 1074 n.17. Here, the majority gives us a concrete example of its usurpation of fact-finding power from the administrative agency to itself. Whether the evidence was "sufficiently” specific was not the majority’s call. Whether hearsay testimony was so specific as to compel it be adjudged credible is the proper standard for judgment. Moreover, the mere absence .of an adverse credibility finding does not compel our court to make a finding contrary to the BIA. That would make a hash out of the REAL ID Act of 2005, which assumes no adverse credibility finding, but authorizes the trier of fact to require corroborating evidence, and in the absence of such corroborating evidence, allows the trier of fact to reject the otherwise credible evidence as of insufficient weight — which is precisely what happened to Bringas. He was given 120 days to buttress his testimony with corroborating details and other evidence. He rejected that opportunity. He gave no explanation as to why he could not produce any of the corroborating evidence requested, even though the statute specifically provides for grounds available to excuse failure to produce the corroboration. See 8 U.S.C. § 1158(B)(i)-(ii) ("The burden of proof is on the applicant to establish that the applicant is a refugee .... Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be corroborated unless the applicant does nqt have the evidence and cannot reasonably obtain .-the evidence.” (emphasis added)); see also supra note 3.

. "Bringas additionally offered several newspaper articles, including one in which the Associated Press reported that a review of more than 70 newspapers in 11 Mexican states’ revealed an increase from ‘an average of nearly 30 killings a year motivated by homophobia between 1995 and 2000’ to ‘nearly 60 a year between 2001 and 2009.’ ” Op. at 1075.

. “In 2007, [Agustin Humberto Estrada Neg-rete] participated in á gay rights march wearing a dress and high heels. According to the NGO Asilegal, soon after the march, Estrada began receiving threatening telephone calls and verbal and physical attacks. In 2008 he was fired from the school for children with disabilities where he worked. After his dismissal, he and a group of supporters began lobbying the government to reinstate him; when they went to the governor’s palace to attend a meeting with state officials in May, police beat him and his supporters. The next day he was taken to prison, threatened, and raped. Although he was released, Estrada continued to face harassment by state authorities.” Op. at 1075.

. See CIA, The World Factbooic (2016), available at https://www.cia.gov/library/ publications/the-world-faclbools/geos/mx.html (estimating Mexico's population to be 123,166,749 as of July 2016). The majority's conclusion that an average of fewer than 60 homophobia-motivated a murders a year in a country of 120 million people compels the conclusion that the Mexican government is unable or unwilling to protect its homosexual citizens is especially confounding given that the same article which documents those murders goes on to discuss the Mexican government’s "radio campaign in 2005 to promote tolerance of homosexuals,” the laws passed in Mexico City which elevated homosexual marriage to the same status as heterosexual marriage and allowed same-sex couples to adopt children, and Mexico City’s annual "gay pride parade.”

. In Matter of A-T-, 24 I. & N. Dec. 617, 621 (A.G. 2008), the BIA held that a female asylum petitioner who had undergone female genital mutilation against her will in Mali was not entitled to the presumption of a well-founded fear of future persecution because there was no chance that she would be personally persecuted again by the procedure. The Attorney General vacated the BIA decision, and stated that'“where an alien demonstrates that she suffered past persecution on account of one of the statutory bases, it is presumed’ that her life or freedom would be threatened in the future ‘on the basis of the original claim’ — in other words, on account of the same statutory ground." Id. at 622. However, .the Attorney General based his decision on the fact that "female genital mutilation is indeed capable of repetition,” and that the petitioner’s fear of future persecution was therefore related to her past persecution. Id. at 621-22. Here, Bringas has not adduced evidence that his past persecution is related to a fear of future persecution, given the nature of his abuse and the identity of his persecutors.

. In a footnote at the end of its opinion, the majority states that "[u]pon remand, the agency should consider [Bringas’s HIV diagnosis], which is 'material' and 'could not have been discovered or presented’ to the IJ.” Op. at 1076 n.19 (internal citations omitted). After Bringas filed his notice of appeal of the IJ’s decision, he claims that he was diagnosed with HIV. Bringas requested that the BIA remand to the IJ to consider Bringas’s HIV-positive status in his applications for relief. Bringas’s brief to the BIA included only one line stating that his HIV status is significant because it places Bringas in a "more vulnerable position should he be returned to Mexico.” The BIA declined to remand to the IJ. This decision was not an abuse of discretion. See Taggar v. Holder, 736 F.3d 886, 889 (9th Cir. 2013) (“We review the [BIA’s] denial of motions to remand for abuse of discretion.” (citing Vargas-Hernandez v. Gonzales, 497 F.3d 919, 923 (9th Cir. 2007))). Bringas failed to provide additional country conditions evidence or arguments to support the claim that his HIV diagnosis would put him in a more vulnerable position, should he be returned to Mexico. Also, the record does not contain evidence of any discrepancy between men and women or between homosexuals and heterosexuals in access to HIV drugs-in Mexico. The BIA provided a reasoned explanation for declining to remand that was neither arbitrary nor irrational. See Romero-Ruiz v. Mukasey, 538 F.3d 1057, 1062 (9th Cir. 2008). Therefore-, I also disagree with the majority that the agency must consider the evidence of Bringas's HIV diagnosis on remand.