**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

SOCORRO COLIN-VILLAVICENCIO,

*Petitioner*,

v.

MERRICK B. GARLAND, Attorney General,

*Respondent*.

No. 22-507

Agency No.
A075-600-791

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 7, 2023
Submission Withdrawn December 14, 2023
Resubmitted July 17, 2024
Pasadena, California

Filed July 23, 2024

Before: J. Clifford Wallace, William A. Fletcher, and Ryan
D. Nelson, Circuit Judges.

Opinion by Judge R. Nelson;
Concurrence by Judge Wallace;
Dissent by Judge W. Fletcher

# SUMMARY[*]

## Immigration

Denying Socorro Colin-Villavicencio's petition for review of a decision of the Board of Immigration Appeals, the panel (1) denied Colin-Villavicencio's derivative citizenship claim, and (2) concluded that substantial evidence supported the denial of relief under the Convention Against Torture (CAT).

Although Colin-Villavicencio, a native and citizen of Mexico, did not raise a claim to derivative United States citizenship before the court, the panel excused the waiver on the ground that deporting a United States citizen would result in manifest injustice. The panel thus requested supplemental briefing on whether she derived citizenship, under 8 U.S.C. § 1432(a), when her mother naturalized.

As relevant here, Colin-Villavicencio had to satisfy § 1432(a)(3), and could do so in one of two ways. First, she could establish that there had "been a legal separation of [her] parents." The panel concluded that she could not meet this pathway because she admitted that her parents never married. Second, she could establish that her paternity had "not been established by legitimation." The panel concluded that she could not meet this pathway because her birth certificate included her father's name and signature and, under Baja California law, her father thus acknowledged paternity.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Therefore, the panel concluded that the undisputed record foreclosed Colin-Villavicencio's derivative-citizenship claim and, because she had neither disputed her birth certificate's authenticity nor her father's paternity, there was no material dispute of fact requiring transfer to a district court under 8 U.S.C. § 1252(b)(5).

As to CAT relief, the panel concluded that Colin-Villavicencio has not shown a particularized risk of torture in Mexico and had not shown that police would acquiesce in her torture.

Concurring, Judge Wallace fully joined the majority opinion, but wrote separately in response to the dissent to elaborate on why no genuine dispute of material fact existed as to legitimation. Judge Wallace wrote that, consistent with this court's precedent, no genuine issue of material fact existed regarding a matter where Colin-Villavicencio had not put forth any argument or evidence. Further, Judge Wallace wrote that it is not this court's function to assume the role of petitioner's counsel, as the dissent did, in his view.

Dissenting, Judge W. Fletcher wrote that the government waived any argument that Colin-Villavicencio failed to satisfy § 1432(a)(3) by failing to address it, despite being specifically directed to do so. In Judge Fletcher's view, that should have been the end of the case. Instead, the majority denied Colin-Villavicencio's claim based on an argument that the government never made (i.e., that her claim failed under § 1432(a)(3)'s legitimation element) and based on extra-record materials that no party had the opportunity to address or perhaps even saw (i.e., a document summarizing the family law of Baja California).

**COUNSEL**

Elizabeth F. Rodriguez (argued), E-Rod Law Office, San Diego, California; Murray D. Hilts, Law Office of Murray D. Hilts, San Diego, California; for Petitioner.

Michael C. Heyse (argued), Trial Attorney; Jonathan A. Robbins, Assistant Director; Brian M. Boynton, Principle Deputy Assistant Attorney General; Civil Division, Office of Immigration Litigation, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

R. NELSON, Circuit Judge:

Socorro Colin-Villavicencio petitions for review of a Board of Immigration Appeals decision denying her request for relief under the Convention Against Torture and asks us to consider her derivative-citizenship claim under 8 U.S.C. § 1432(a). We deny her petition and derivative-citizenship claim.

I

Colin-Villavicencio, born in 1983, is a native and citizen of Mexico. In 1988, she entered the United States lawfully after being issued a border crossing card. A decade later, Colin-Villavicencio's mother, Sandra Villavicencio, became a naturalized citizen. Within a year, Colin-Villavicencio had filed a Form I-485 application for adjustment of status to lawful permanent resident. After she missed a fingerprint appointment, U.S. Citizenship and Immigration Services (USCIS) considered her application for adjustment of status

abandoned. The application was reopened, but she missed another fingerprint appointment. She received a Notice to Appear (NTA) in 2002, but an Immigration Judge (IJ) administratively closed those proceedings shortly after at the parties' request.

In June 2015, the Department of Homeland Security (DHS) commenced removal proceedings after Colin-Villavicencio was convicted of two counts of felony child abuse, one count of possession of a controlled substance for sale, and one count of possession of a controlled substance.

Colin-Villavicencio represented herself pro se at her initial removal proceedings in 2015. She claimed that she was a citizen based on her mother's naturalization seventeen years earlier. She testified that her parents never married and her father, who had died by 2009, became a lawful permanent resident, but never naturalized. To support her citizenship claim, she provided (1) her mother's naturalization certificate, (2) her authorization for parole form, (3) her Mexican birth certificate, and (4) her border crossing card. Ultimately, an IJ denied her derivative-citizenship claim because she did not demonstrate that she became a lawful permanent resident as a minor. The IJ thus found her removeable and provided her a Form I-589 application so she could support a claim for asylum, withholding of removal, or Convention Against Torture (CAT) protection.

In 2019, Colin-Villavicencio submitted her Form I-589 application for a removal hearing before a different IJ. On her application, she listed her mother as "Sandra Villavicencio" and her father as "Vidal Colin." At the hearing, Colin-Villavicencio conceded that she was ineligible for asylum and withholding of removal because

her prior convictions were for "particularly serious crimes." She sought CAT relief, asserting that she feared returning to Mexico and becoming the target of a criminal organization. She testified that her brother was deported from the United States in 2005 because of criminal convictions and subsequently, in 2015, was "threatened, beaten, and stabbed by organized criminals" in Mexico. She believed her brother was targeted because he had lived in the United States. Prior to her brother's stabbing, her mother was extorted several times and paid money to keep her brother safe in Mexico. She also testified that the police took a report of her brother's stabbing, but she was not sure if it was investigated. She believed that she would be similarly targeted, threatened, and extorted if she were deported from the United States because criminals would assume she had money. She submitted the Mexico 2018 Human Rights Report and articles on country conditions.

That same day, the IJ issued a decision reaffirming the previous IJ's finding that Colin-Villavicencio was not a United States citizen under the Immigration and Nationality Act (INA) § 320 because she had not established that she obtained lawful permanent residence status as a minor. The IJ also found that by using drugs in her children's presence—resulting in detectible levels of controlled substances in their systems—Colin-Villavicencio committed a "particularly serious crime." This precluded withholding of removal. The IJ found her ineligible for asylum because of her aggravated felony conviction. The IJ then denied her CAT claim and ordered her removed.

On appeal to the Board of Immigration Appeals (BIA), Colin-Villavicencio challenged the denial of CAT relief but not the IJ's denial of her derivative-citizenship claim under INA § 320. The BIA affirmed the IJ's denial of CAT relief.

The BIA affirmed the IJ's determination that Colin-Villavicencio did not establish that it is more likely than not that she will be tortured in Mexico with the acquiescence of the government.  The BIA agreed with the IJ that the background country conditions were not sufficiently relevant to support her risk of torture and that she had not provided evidence showing the circumstances of the attack on her brother.  The BIA also affirmed the IJ's determination that the police report of the stabbing of Colin-Villavicencio's brother weighed against a finding that public officials would be complicit.  The BIA further agreed with the IJ that evidence of country conditions showing that Mexican government officials have acted in concert with criminals does not establish that they would in Colin-Villavicencio's case.  Accordingly, the BIA affirmed the IJ's determination that Colin-Villavicencio had not established eligibility for CAT relief.

## II

We review legal questions de novo and factual findings for substantial evidence. *Gonzalez-Rivera v. I.N.S.*, 22 F.3d 1441, 1444 (9th Cir. 1994).  The BIA's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 590 U.S. 573, 584 (2020) (quoting 8 U.S.C. § 1252(b)(4)(B)).

We have jurisdiction to hear nationality claims under 8 U.S.C. § 1252(b)(5). Nationality claims do not require administrative exhaustion. *Iasu v. Smith*, 511 F.3d 881, 890 (9th Cir. 2007).  For a citizenship claim, we may consider evidence outside the administrative record. *Brown v. Holder*, 763 F.3d 1141, 1145 n.2 (9th Cir. 2014) (citing 8 U.S.C. § 1252(b)(5)(B)).  Petitioner bears the burden of

showing credible evidence to support her derivative-citizenship claim. *See Berenyi v. I.N.S.*, 385 U.S. 630, 637 (1967); *Hussein v. Barrett*, 820 F.3d 1083, 1088 (9th Cir. 2016).

Under § 1252(b)(5)(A), if the record presents "no genuine issue of material fact about the petitioner's nationality" then the court of appeals "shall decide the nationality claim."  But if "the petitioner claims to be a national of the United States and . . . a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing . . . ."  § 1252(b)(5)(B). "Traditional summary judgment rules guide our decision concerning transfer." *Ayala-Villanueva v. Holder*, 572 F.3d 736, 738 (9th Cir. 2009) (citing *Chau v. I.N.S.*, 247 F.3d 1026, 1029 (9th Cir. 2001)).   "Where 'the evidence presented in support of the claim would be sufficient to entitle a litigant to trial were such evidence presented in opposition to a motion for summary judgment,' transfer for a *de novo* determination of the citizenship claim is statutorily mandated." *Id.* (citing *Chau*, 247 F.3d at 1029).

### III

### A

Colin-Villavicencio petitioned this court for review of the BIA's decision.  Although she did not raise her derivative-citizenship claim before us, we may review the issue to avoid "manifest injustice." *Alcaraz v. I.N.S.*, 384 F.3d 1150, 1161 (9th Cir. 2004) (quoting *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992)).   Because deporting a United States citizen would result in manifest injustice, we asked for two rounds of supplemental briefing

addressing whether there are genuine issues of material fact relevant to Colin-Villavicencio's derivative-citizenship claim.

As noted in our supplemental briefing order, our precedent about what is required under § 1432(a) to be eligible for derivative citizenship changed since Colin-Villavicencio's appeal to the BIA.  Under INA § 320 in effect when Colin-Villavicencio's mother naturalized, a naturalized parent's minor child acquired derivative citizenship if she was residing in the country at the time of the naturalization "pursuant to a lawful admission for permanent residence" or "thereafter beg[an] to reside permanently in the United States while under the age of eighteen years."  § 1432(a)(5) (1998).  In *Romero-Ruiz v. Mukasey*, 538 F.3d 1057, 1062 (9th Cir. 2008), we interpreted "begins to reside permanently in the United States" as requiring that a minor be a legal permanent resident.  But three years ago, we overruled *Romero-Ruiz* and held that the "begins to reside permanently in the United States" pathway "does not require that the child have necessarily been granted lawful permanent residency, although the child must have demonstrated an objective official manifestation of permanent residence."  *Cheneau v. Garland*, 997 F.3d 916, 917–18 (9th Cir. 2021) (en banc).

So in 2015, when the IJ rejected Colin-Villavicencio's derivative-citizenship claim, it properly did so under then-existing precedent.  Consistent with *Romero-Ruiz*, the IJ determined that Colin-Villavicencio did not acquire derivative citizenship under § 1432(a) because she did not become a legal permanent resident before turning eighteen.  The IJ's finding, however, is insufficient under *Cheneau*, which established a new legal standard for

derivative citizenship that neither the IJ nor BIA had an opportunity to analyze. *See Cheneau*, 997 F.3d at 918.

In the first round of supplemental briefing, we ordered the parties to address how our intervening decision in *Cheneau* affected Colin-Villavicencio's derivative-citizenship claim. In her first round of supplemental briefing, Colin-Villavicencio argued that she is eligible for derivative citizenship because she began to reside permanently in the United States while under the age of eighteen and after her mother naturalized as required by 8 U.S.C. § 1432(a)(5). Colin-Villavicencio also argued that she demonstrated an intent to reside permanently in the United States. The government asserted that Colin-Villavicencio did not demonstrate the requisite intent to reside permanently in the United States because she abandoned her application to become a legal permanent resident. In their first supplemental briefs, both parties focused only on the requirements for derivative citizenship under § 1432(a)(5)—the provision at issue in *Cheneau*.

In the second round of supplemental briefing, we ordered the parties to address whether Colin-Villavicencio satisfied any of the conditions at 8 U.S.C. § 1432(a)(1)–(3). In response, Colin-Villavicencio only asserted that § 1432(a)(3) applied. She argued that it applied to her because her mother naturalized, and she was born out of wedlock. Colin-Villavicencio did not address the other clause in § 1432(a)(3), which requires a child born out of wedlock to prove that the paternity of the child has not been established by legitimation. The government again argued that Colin-Villavicencio did not demonstrate the requisite intent to reside permanently in the United States required by § 1432(a)(5).

There is no exhaustion requirement of a citizenship claim. *Iasu*, 511 F.3d at 890. Thus, Colin-Villavicencio was not required to raise her derivative-citizenship claim before the BIA. And, as discussed above, before *Cheneau* she did not have a viable derivative-citizenship claim, and "aliens need not exhaust in cases 'where resort to the agency would be futile.'" *Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 895–96 (9th Cir. 2021) (quoting *Sun v. Ashcroft*, 370 F.3d 932, 943 (9th Cir. 2004)).

Still, Colin-Villavicencio could have raised her derivative-citizenship claim under *Cheneau* in her petition to us. She failed to do so. That said, we excuse the waiver since allowing a citizen to be deported would result in manifest injustice. *Cf. Alcaraz*, 384 F.3d at 1161. And because her citizenship claim turns on a legal question without any disputed facts, we address it. *See* § 1252(b)(5).

## B

Section 1432 provides the conditions that the child of a naturalized citizen must meet to obtain derivative citizenship:

> (a) A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions:
>
> (1) The naturalization of both parents; or
> (2) The naturalization of the surviving parent if one of the parents is deceased; or
> (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was

born out of wedlock and the paternity of the child has not been established by legitimation; and if

(4) Such naturalization takes place while such child is under the age of eighteen years; and

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

§ 1432(a) (1998) (repealed 2000).[1]

Colin-Villavicencio cannot meet the requirements of § 1432(a)(1)—that both parents were naturalized. It is undisputed that her mother naturalized in 1998 when she was fifteen, and her father became a lawful permanent resident but never naturalized.

Colin-Villavicencio also cannot meet the requirements of § 1432(a)(2)—the naturalization of a surviving parent if one of the parents is deceased—because her father did not die before her mother's naturalization or before Colin-

---

[1] "[D]erivative citizenship is determined under the law in effect at the time the critical events giving rise to eligibility occurred." *Ayala-Villanueva*, 572 F.3d at 738 (quoting *Minasyan v. Gonzales,* 401 F.3d 1069, 1075 (9th Cir. 2005)). Thus, we look to the version of the INA in effect when Colin-Villavicencio's mother naturalized in 1998.

Villavicencio turned eighteen. It is undisputed that her father died in 2008 or 2009.

Given this, Colin-Villavicencio must meet both conditions of §§ 1432(a)(3) and (5).[2] Or, if she can show a genuine issue of material fact related to both provisions, transfer to a district court is warranted. *See* § 1252(b)(5)(B). But Colin-Villavicencio cannot show that she meets § 1432(a)(3)'s requirement—or that there is a dispute on that question. Therefore, her citizenship claim necessarily fails.[3]

1

Section 1432(a)(3) can be satisfied in one of two ways. Colin-Villavicencio cannot meet § 1432(a)(3)'s first pathway because she cannot show that her parents "legal[ly] separate[ed]" before she turned eighteen. A prerequisite of such separation is marriage. *See Barthelemy v. Ashcroft*, 329 F.3d 1062, 1065 (9th Cir. 2003), *overruled on other grounds as recognized in United States v. Mayea-Pulido*, 946 F.3d 1055, 1062 (9th Cir. 2020). Colin-Villavicencio testified, however, that her parents never married, and admitted the same in her supplemental briefing before us. This concession is conclusive for purposes of the first part of § 1432(a)(3). Colin-Villavicencio had the burden to establish a genuine dispute of fact. *Anheuser–Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 345 (9th Cir. 1995). When she admitted that her parents were unmarried, she failed to carry that burden.

---

[2] Section 1432(a)(4) is met because Colin-Villavicencio was fifteen when her mother was naturalized.

[3] Because Colin-Villavicencio cannot meet § 1432(a)(3), we need not address § 1432(a)(5).

The dissent disagrees with our conclusion that there is no genuine dispute of fact about Colin-Villavicencio's parents' marital status. Relying on *Giha v. Garland*, 12 F.4th 922, 933–37 (9th Cir. 2021), the dissent contends that it is an open question in this circuit whether a "de facto union" is a sufficient "legal relationship" to satisfy § 1432(a)(3). But Colin-Villavicencio never argued that her parents entered a de facto union in her supplemental briefing. Colin-Villavicencio bears the burden to establish these factual disputes. She has failed to carry that burden. The only fact we have is that Colin-Villavicencio was born out of wedlock. Nothing more was presented that would suggest any de facto union. There are no factual disputes supporting a de facto union despite the dissent's theorizing about potential factual disputes that were never raised. There is no factual or legal basis that has been presented to us to conclude that Colin-Villavicencio's parents were in a de facto union.

The persuasive authority cited by the dissent reinforces our conclusion. In *Espichan v. Attorney General*, 945 F.3d 794, 799–800 (3d Cir. 2019), for example, the petitioner presented evidence including affidavits, a police report, and a legal memorandum prepared by a Peruvian law firm, to argue that his parents had a de facto marriage. Colin-Villavicencio presented nothing similar here. Rather, she cites the record in support of her position that "she was born out of wedlock." The dissent asserts that Colin-Villavicencio had no reason to clarify her parents' marital status before her current appeal. This is true. We requested two rounds of supplemental briefing to provide her with the opportunity to make such a clarification. She failed to make any argument or present evidence to us about her parents' marital status to us. If she had done so, we could have transferred to a district court.

2

Neither can Colin-Villavicencio make a showing under the second pathway of § 1432(a)(3), which requires the mother's naturalization if the child was born out of wedlock and that paternity has not been established by legitimation. Again, it is undisputed that she was born out of wedlock. Thus, she must show that her father's paternity was not established by legitimation.[4]

Colin-Villavicencio was born in Mexicali Baja California, Mexico, and resided in Mexicali until she came to the United States. Accordingly, we apply Baja California, Mexico's laws to determine whether paternity was established by legitimation. *See Romero-Mendoza v. Holder*, 665 F.3d 1105, 1108 (9th Cir. 2011) ("Legitimation may be established under either the law of the child's residence or the father's residence.").[5]

When Colin-Villavicencio was born in 1983, under Baja California's civil code, a parent could establish parental rights by voluntarily acknowledging the child on the birth

---

[4] Neither Colin-Villavicencio nor the government argued in supplemental briefing whether her father's paternity was established by legitimation. Because Colin-Villavicencio bears the burden to establish her basis for relief, *Hussein*, 820 F.3d at 1088, she arguably waived this as any basis for her citizenship claim, *see Lopez-Vasquez v. Holder*, 706 F.3d 1072, 1079–80 (9th Cir. 2013). We retain discretion to address waived legal issues. *Alcaraz*, 384 F.3d at 1161. Because of the importance of determining a petitioner's citizenship status, we address the legal issue here.

[5] Colin-Villavicencio also resided in California for over twenty-seven years, and her father resided in Chicago, Illinois. But because paternity by legitimation is established under Baja California's civil code, we need not analyze other jurisdictions' laws.

record before the Civil Registry Officer. **⁶**  Her birth certificate located in the Office of the Civil Registrar of Mexicali Baja, California, lists Jose Vidal Colin Ortiz as Colin-Villavicencio's father and includes her father's signature.  Thus, her father voluntarily acknowledged paternity, and she cannot make a showing under § 1432(a)(3)'s second pathway.

The undisputed record therefore forecloses Colin-Villavicencio's derivative-citizenship claim.  She has neither disputed her birth certificate's authenticity nor her father's paternity.  Absent a material dispute of fact, transfer to a district court is unwarranted.  *Compare Roy v. Barr*, 960 F.3d 1175, 1180 (9th Cir. 2020) *with Ayala-Villanueva*, 572 F.3d at 740.

The dissent takes no issue with these facts.  The dissent never suggests any basis for not concluding Ortiz is Colin-Villavicencio's father.  Instead, the dissent disputes the legal conclusion that Ortiz's act satisfies the legitimation requirement under § 1432(a)(3).  The dissent contends that it is not clear from the 2004 Library of Congress report whether the "acknowledgment" of paternity by the father under Baja California law is the same as "legitimation" for purposes of § 1432(a)(3).  But the dissent cites no authority for its position.  And our precedent suggests that the dissent's manufactured distinction has no relevance here.

---

⁶ *See* Norma C. Gutiérrez, The Law Library of Congress, Baja California, Mexico: Parentage, Filiation and Paternity Laws, L.L. File No. 2004–00642 (2004) (interpreting the civil code of Baja California officially published in 1974), https://www.loc.gov/item/2021699506/; *see also Iracheta v. Holder*, 730 F.3d 419, 424–25 (5th Cir. 2013) (relying on a similar Library of Congress Report for Tamaulipas, Mexico to determine whether paternity had been established by legitimation).

We have acknowledged that "[i]n multiple cases, federal courts of appeals and the BIA have held that statutes abolishing the distinction between legitimate and illegitimate children suffice to meet the requirement of 'legitimation.'" *Anderson v. Holder*, 673 F.3d 1089, 1099 (9th Cir. 2012). And we have held this for purposes of § 1432. *See Romero-Mendoza*, 665 F.3d at 1109 ("When legal distinctions are eliminated between children born to married parents and those born out of wedlock, the children born out of wedlock are deemed to be legitimated as of the date the laws are changed."). The First Circuit has followed suit: "[a]lthough the INA does not expressly define 'legitimation' . . . the BIA has defined the term 'as the act of putting a child born out of wedlock in the same legal position as a child born in wedlock.'" *Miranda v. Sessions*, 853 F.3d 69, 74 (1st Cir. 2017) (quoting *Iracheta*, 730 F.3d at 425) (citation to BIA opinion omitted).

Under the Baja California Civil Code, "all children have equal rights regardless of whether they were born within a union not bound by marriage or within a marriage." *Gutiérrez*, *supra* note 6, at 3. It is of no legal significance that Baja California requires that a child born outside of marriage "have their rights implemented" by a father "acknowledging" them rather than by "legitimation." *Id.*; *see Iracheta*, 730 F.3d at 426 ("It is of no moment that the applicable [law] distinguishes between 'legitimation' and 'acknowledgment' in its text."); *see also id.* ("[I]t is the substance that matters, not the legal label.").

The definition of "legitimation," and the correct interpretation of Baja California laws, are legal questions that appellate courts can—and do—decide. *See e.g.*, *de Fontbrune v. Wofsy*, 838 F.3d 992, 997 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Nov. 14,

2016). And the dissent points to no factual dispute relevant to that legal question.[7]

The dissent also ignores that Colin-Villavicencio never disputed that her father's paternity was established by legitimation. The dissent objects to our legal conclusion that Colin-Villavicencio's paternity was established by legitimation. But Colin-Villavicencio never argued that her paternity was not established by legitimation, either before the IJ, or in responding to our request for supplemental briefing. In one sentence of her second supplemental brief, Colin-Villavicencio argues that she satisfied § 1432(a)(3) "because her mother naturalized, and she was born out of wedlock." She did not address the legitimation requirement nor explain why her father's signature on the birth certificate does not meet the requirement. More importantly, Colin-Villavicencio never presented any evidence that would create a dispute about legitimation. And the dissent cites no evidence that could undermine legitimation. This hardly constitutes a dispute. The dissent argues that the government waived any argument under § 1432(a)(3) and accuses us of failing to excuse any waiver by Colin-Villavicencio. But Colin-Villavicencio bears the burden of showing credible evidence to support her citizenship claim, not the government. *See Berenyi*, 385 U.S. at 637. And the only conclusion from the evidence presented is that there is no question of fact about Ortiz's paternity of Colin-

---

[7] The dissent also conflates factual and legal issues by suggesting that we improperly relied on the 2004 Library of Congress Report, which summarized portions of the legitimation laws of Baja California, because it is outside the record. That the report was not included in the record provided by the BIA is not relevant. *See, e.g.*, *Brown v. Holder*, 763 F.3d 1141, 1145 n.2 (9th Cir. 2014). Indeed, the Fifth Circuit has relied on a similar report to decide legitimation. *See Iracheta*, 730 F.3d at 424–25.

Villavicencio.  Thus, she cannot establish citizenship under § 1432(a)(3).

The dissent criticizes us for conducting our own review of the record to determine whether Colin-Villavicencio satisfied this requirement in § 1432(a)(3).  But conducting our own review of the record is not out of the ordinary.  *C.f. Chau*, 247 F.3d at 1030.  The alternative is to deny Colin-Villavicencio's derivative-citizenship claim for not arguing that her father did not establish paternity by legitimation.

We have no authority to transfer a legal question to a district court for consideration in the first instance.  If the record presents no genuine factual dispute, then this court "*shall* decide the nationality claim."  § 1252(b)(5)(A) (emphasis added).

The INA in effect when Colin-Villavicencio's mother naturalized does not provide derivative citizenship for children in her circumstance.  The statute is silent about children with unmarried parents, a father who established paternity, and a naturalized mother.  And it is a principle of statutory construction that judges should not fill a gap in a statute left open by Congress.  Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 95 (2012).  To hold otherwise would result in "an enlargement of [the statute] by the court, so that what was omitted . . . may be included within its scope."  *Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (quoting *Iselin v. United States,* 270 U.S. 245, 251 (1926)).  We will not take that step. Accordingly,  Colin-Villavicencio's  derivative-citizenship claim is denied.

IV

That leaves Colin-Villavicencio's CAT claim. We review the denial of CAT relief for substantial evidence. *Guo v. Sessions*, 897 F.3d 1208, 1212 (9th Cir. 2018). Here, substantial evidence supports the denial of the CAT claim.[8] To prevail on a CAT claim, an alien must prove that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). "Torture is an extreme form of cruel and inhuman treatment," § 1208.18(a)(2), that must be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." § 1208.18(a)(1).

In determining the likelihood of torture, the agency should consider (1) "[e]vidence of past torture," (2) evidence relating to the noncitizen's ability to internally relocate, (3) evidence of human rights violations within the country, and (4) any other country conditions evidence. § 1208.16(c)(3)(i)-(iv). The applicant must show that any

---

[8] Colin-Villavicencio also asserts that the immigration court lacked jurisdiction under 8 C.F.R. § 1003.14(a) because DHS filed an NTA without setting the date and time for her hearing pursuant to 8 U.S.C. § 1229(a). We have concluded that "the 'jurisdiction vests' phraseology of 8 C.F.R. § 1003.14(a)" is "colloquial—that is to say, not denoting 'subject matter jurisdiction' or the court's fundamental power to act." *United States v. Bastide-Hernandez*, 39 F.4th 1187, 1193 (9th Cir. 2022). Furthermore, an NTA without a date and time later supplemented with an appropriate notice complies with the requirements of § 1003.14(a). *See id.*; *Karingithi v. Whitaker,* 913 F.3d 1158, 1159–60 (9th Cir. 2019). Thus, DHS has complied with § 1003.14(a) where it filed an undated NTA in June 2015 to begin removal proceedings, which was supplemented with a notice setting Colin-Villavicencio's initial hearing.

risk of torture is particularized. *See Delgado-Ortiz v. Holder,* 600 F.3d 1148, 1152 (9th Cir. 2010).

"Public officials acquiesce in torture if, 'prior to the activity constituting torture,' the officials: (1) have awareness of the activity (or consciously close their eyes to the fact it is going on); and (2) breach their legal responsibility to intervene to prevent the activity because they are unable or unwilling to oppose it." *Garcia-Milian v. Holder,* 755 F.3d 1026, 1034 (9th Cir. 2014) (quoting *Ornelas-Chavez v. Gonzales,* 458 F.3d 1052, 1059 (9th Cir. 2006)). But "[a] government does not acquiesce in the torture of its citizens merely because it is aware of torture but powerless to stop it." *Id.* (quoting *Mouawad v. Gonzales,* 485 F.3d 405, 413 (8th Cir. 2007)).

Colin-Villavicencio has not shown a particularized risk of torture. She offers only the speculative conclusion that her brother was "threatened, beaten, and stabbed by organized criminals" because "[h]e was deported." From this, she concludes that she faces the same risk. Such an unsupported leap is unwarranted. Her brother was attacked ten years after being deported, and could have been attacked because of his criminal conduct. On this record, there is no hook on which we can conclude that she faces the same dangers. Nor has she shown that the police would acquiesce to her torture. In fact, Colin-Villavicencio testified that the police created a report of her brother's stabbing, showing that the police did not acquiesce to his attack. Nothing in the record supports a conclusion that they would acquiesce to hers. Thus, the BIA's decision is supported by substantial evidence, and her CAT claim fails.

V

Colin-Villavicencio does not have derivative citizenship based on 8 U.S.C. § 1432(a). And substantial evidence supports the BIA's denial of CAT relief.

**PETITION DENIED.**

---

WALLACE, Circuit Judge, concurring:

I fully join the majority opinion. I write separately in response to the dissent to elaborate on why no genuine dispute of material fact exists as to whether Petitioner Socorro Colin-Villavicencio's paternity has been established by legitimation—a requirement under 8 U.S.C. § 1432(a)(3)'s second pathway to derivative citizenship.[1]

I.

Both the majority opinion and the dissent agree that Colin-Villavicencio must satisfy one of the conditions listed in sections 1432(a)(1)–(3) to succeed on her derivative-citizenship claim. That is precisely why our second supplemental briefing order directed the parties to address "whether a genuine issue of material fact is presented as to whether Petitioner has satisfied any of the specific conditions listed at § 1432(a)(1)–(3)." In response, the government merely reasserted its previous argument that Colin-Villavicencio did not satisfy section 1432(a)(5),

---

[1] The majority opinion accurately details Colin-Villavicencio's undisputed testimony that (i) her father never naturalized; (ii) her father died after she turned eighteen; and (iii) her parents never married, thus precluding satisfaction of 8 U.S.C. §§ 1432(a)(1) and (a)(2), as well as (a)(3)'s first pathway. At any rate, Colin-Villavicencio does not rely on any of those provisions for her derivative-citizenship claim.

another statutory prerequisite for her derivative-citizenship claim. Although Colin-Villavicencio was more responsive to our second supplemental briefing order, in that she addressed section 1432(a)(3), she did not address the relevant portion of the subsection in its entirety.

The dissent reads the government's non-responsiveness to our second supplemental briefing order as either "tacitly conced[ing] that [Colin-Villavicencio] has satisfied § 1432(a)(3)," Dissent at 35, or "waiv[ing] any argument based on § 1432(a)(3)," either way insisting that is "the end of the case," *id.* at 36. As discussed below, the dissent sidesteps the shortcomings in Colin-Villavicencio's second supplemental brief. Importantly, it is Colin-Villavicencio's burden, not the government's, to create a genuine dispute of material fact requiring transfer to the district court for additional fact-finding. Although the government's briefing was unfortunate in its omissions, it is Colin-Villavicencio's failure to demonstrate a genuine issue of material fact with respect to section 1432(a)(3)'s second pathway that compels us to decide her derivative-citizenship claim.

Under section 1432(a)(3)'s second pathway, Colin-Villavicencio must show the "naturalization of [her] mother if [she] was born out of wedlock and [her] paternity . . . has not been established by legitimation." As the majority opinion correctly points out, Colin-Villavicencio's entire argument that she satisfied the second pathway under section 1432(a)(3) is contained in one sentence: "Here, clause (3) of section 1432 applies to petitioner because her mother naturalized, and she was born out of wedlock." Critically, Colin-Villavicencio did not argue that her paternity has not been established by legitimation, as required under section 1432(a)(3)'s second pathway.

## II.

Under 8 U.S.C. § 1252(b)(5)(A), if a petitioner claims to be a United States citizen "and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim."  If, however, "the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court . . . in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim . . . ."  *Id.* § 1252(b)(5)(B).

The question for us is whether the lack of argument from either party as to a statutory requirement—which is dispositive of Colin-Villavicencio's derivative-citizenship claim—presents a genuine issue of material fact requiring transfer to a district court under section 1252(b)(5)(B). Precedent from this court and the Supreme Court compels us to answer in the negative.

"In determining whether a genuine issue of material fact exists, traditional summary judgment principles apply." *Chau v. I.N.S.*, 247 F.3d 1026, 1029 (9th Cir. 2001).  Thus, "[i]n order to create a genuine issue of fact that warrants an evidentiary hearing," Colin-Villavicencio "must satisfy traditional summary judgment principles, such as tendering sufficient evidence for each statutory element." *Baeta v. Sonchik*, 273 F.3d 1261, 1265 (9th Cir. 2001), citing *Chau*, 247 F.3d at 1028; *see also Agosto v. I.N.S.*, 436 U.S. 748, 757 (1978) ("The evidence adduced by petitioner to support his claim of American citizenship creates 'genuine issue[s] of material fact' that can only be resolved in a *de novo* hearing in the District Court.").  This is consistent with the "universally accepted" principle "that the burden is on the

alien applicant to show his eligibility for citizenship in every respect." *Berenyi v. Dist. Dir., I.N.S.*, 385 U.S. 630, 637 (1967).

As discussed above, Colin-Villavicencio did not argue that her father has not established paternity by legitimation, let alone tender evidence to that effect.[2] Nor did Colin-Villavicencio attempt to supplement the administrative record with evidence bearing on the issue. *See Brown v. Holder*, 763 F.3d 1141, 1145 n.2 (9th Cir. 2014) ("[T]he court of appeals may go beyond the administrative record when it transfers a matter to the district court because there is a genuine issue of fact.", citing 8 U.S.C. § 1252(b)(5)(B)).[3] So, we are left with mere speculation about what arguments Colin-Villavicencio could have made (but did not given the opportunity do so). But "[s]peculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005), quoting *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995). Our prior cases applying section 1252(b)(5) recognized this. *See e.g.*, *Baeta*, 273 F.3d at 1265 (concluding there were "no genuine issues of

---

[2] The dissent states that the "government's failure to address § 1432(a)(3) cannot have been inadvertent." Dissent at 35. I do not infer, nor think it appropriate to infer, any motive for the government's omission. Regardless, the same could be said about Colin-Villavicencio's failure to address whether her father has established paternity by legitimation.

[3] In a similar vein, if Colin-Villavicencio wanted to clarify her prior testimony regarding her father's naturalization status or her parents' legal and marital status, she could have done so by affidavit. *See Brown*, 763 F.3d at 1145 n.2; *see also* 8 U.S.C. § 1252(b)(5)(A) (instructing the court of appeals to review "pleadings and affidavits").

material fact" because petitioner "did not tender any evidence" that his parents or grandmother were United States citizens). Consistent with our precedent, no genuine issue of material fact exists regarding a matter where Colin-Villavicencio has not put forth any argument or evidence.[4]

### III.

The dissent proclaims that "[i]t is not our function to raise and argue claims on the government's behalf." Dissent at 46. Yet, "[i]n the absence of a genuine issue of material fact, we must decide the nationality claim." *Ayala-Villanueva v. Holder*, 572 F.3d 736, 740 (9th Cir. 2009), citing 8 U.S.C. § 1252(b)(5)(A). In my view, having found no such factual dispute, the majority opinion's review of the record to determine whether Colin-Villavicencio has satisfied the statutory requirements for derivative citizenship is well within our role. *See Baeta*, 273 F.3d at 1265 ("[A]fter a careful review of the record, we conclude that there are no genuine issues of material fact and that [petitioner's] citizenship claim must be denied."); *Chau*, 247 F.3d at 1030 (conducting "[o]ur own review of the record" for a derivative-citizenship claim).

However, it is not our function to assume the role of petitioner's counsel, as the dissent does, constructing arguments on her behalf to manufacture a factual dispute. This type of advocacy, while laudable from the bar, is improper from the bench. "As judges, the essence of our role is restrained service as impartial arbiters of disputes framed by litigants. It is not, I respectfully suggest, to act as backup

---

[4] Indeed, Colin-Villavicencio made no attempt to argue that her birth certificate signed by her father in the record does not establish paternity by legitimation under a relevant jurisdiction's laws.

counsel when litigants make poor arguments, or when they come into court without first having figure[d] out their cases . . . ." *Kennedy v. Lockyer*, 379 F.3d 1041, 1065 (9th Cir. 2004) (O'Scannlain, J., dissenting) (internal quotation marks omitted).

Colin-Villavicencio's lack of argument or evidence that her father has not established paternity by legitimation fails to create a genuine issue of material fact requiring transfer to a district court under section 1252(b)(5)(B).  Especially, considering the record contains Colin-Villavicencio's undisputed birth certificate signed by her father. Accordingly, the majority opinion is correct to decide Colin-Villavicencio's derivative-citizenship claim on the record before us.

---

W. Fletcher, J., dissenting.

After the parties in this case filed their briefs in the Board of Immigration Appeals ("BIA"), we decided *Cheneau v. Garland*, 997 F.3d 916 (9th Cir. 2021) (en banc).  Prior to our decision in *Cheneau*, a minor child whose parent naturalized as an American citizen had two pathways to derive citizenship from the naturalized parent.  Under the pathway relevant to this case, if the child was not a lawful permanent resident ("LPR") at the time of the parent's naturalization, he or she had to achieve LPR status before turning eighteen.  *See id.* at 917.  But under *Cheneau*, the child of a naturalized parent does not need to have achieved LPR status before turning eighteen.  He or she needs only to have "demonstrated an objective official manifestation of permanent residence" before that age.  *Id.* at 918.

Petitioner Socorro Colin-Villavicencio has never had LPR status. On September 26, 1998, when she was fifteen years old, her mother became a naturalized citizen. While representing herself before the Immigration Judge ("IJ") in the removal proceedings at issue in this case, Colin-Villavicencio argued that the government could not remove her from the United States because she had automatically obtained derivative citizenship when her mother naturalized. Our circuit's pre-*Cheneau* precedent requiring LPR status was fatal to her argument. The IJ properly rejected her argument under the law as it then stood. The BIA dismissed her appeal without citing *Cheneau* and without addressing her claim to citizenship.

Under *Cheneau*, Colin-Villavicencio has derivative citizenship from her mother if, before turning eighteen, she "demonstrated an objective official manifestation of permanent residence" and fulfilled the other relevant requirements of 8 U.S.C. § 1432. I agree with the panel majority that we should address Colin-Villavicencio's claim of citizenship. However, I strongly disagree with the result reached by the panel majority.

The panel majority concludes that Colin-Villavicencio is not a citizen based on an argument that the government has never made and based on extra-record materials that no party has presented or likely even seen. In so doing, the panel majority improperly acts as both a government advocate and a district court factfinder, and it approves an order of removal from the United States of a person who may well be an American citizen.

I dissent.

## I.  Background

## A.  Statutory Background

When Colin-Villavicencio's mother was naturalized in 1998, a child of a naturalized citizen was automatically entitled to derivative citizenship as follows:

> **§ 1432.  Children born outside the United States of alien parents; conditions for automatic citizenship**
>
> (a) A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions:
>> (1) The naturalization of both parents; or
>> (2) The naturalization of the surviving parent if one of the parents is deceased; or
>> (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if
>> (4) Such naturalization takes place while such child is under the age of eighteen years; and
>> (5) Such child . . . of the parent naturalized under clause . . . (3) of this subsection . . . thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. § 1432 (repealed in 2000).

In order to gain "automatic citizenship" under § 1432, a person in Colin-Villavicencio's position must satisfy any one of the conditions listed in § 1432(a)(1)–(3). The person must also satisfy both of the conditions listed in § 1432(a)(4) and (a)(5).

The parties agree that Colin-Villavicencio satisfied § 1432(a)(4). Colin-Villavicencio has argued that she also satisfies § 1432(a)(3) and (a)(5). After oral argument in this case, we specifically asked the parties to provide supplemental briefs addressing § 1432(a)(1)–(3). Despite having been invited to do so, the government made no argument addressing § 1432(a)(1)–(3). The government argued in its supplemental briefing only that Colin-Villavicencio did not satisfy § 1432(a)(5); it did not address Colin-Villavicencio's argument that she has satisfied § 1432(a)(3). I repeat for emphasis: Despite having been asked to do so, the government did not address in its supplemental briefing—indeed, the government has *never* addressed—Colin-Villavicencio's argument that she has satisfied § 1432(a)(3).

The panel majority does not reach the government's argument that Colin-Villavicencio's has failed to satisfy § 1432(a)(5). If the panel majority were to reach that question, it would be required to conclude that the government's argument is clearly wrong. As I will explain below, the government's argument is based on an obvious factual error about what is in the administrative record.

Notwithstanding the government's failure to address § 1432(a)(3), the panel majority concludes that Colin-Villavicencio has not satisfied that subsection.

### B.  Factual Background

Colin-Villavicencio was born in Mexico and lawfully entered the United States with her mother when she was five years old.  She remained in the United States lawfully and continuously throughout the rest of her childhood.  In 1998, when Colin-Villavicencio was fifteen years old, her mother became a naturalized United States citizen.

Before she naturalized, Colin-Villavicencio's mother had petitioned for Colin-Villavicencio to be eligible for adjustment to LPR status.  The petition was approved a month before her mother naturalized.  In June 2000, Colin-Villavicencio was granted advance parole, which allowed her to leave the country without affecting her application for adjustment of status to LPR.

Though her advance parole permitted her to leave the country, Colin-Villavicencio did not leave the United States before turning eighteen on March 11, 2001.  On that date, her application for adjustment of status was still pending.  According to her uncontradicted testimony before the IJ, a few days after she turned eighteen, she left the United States for one day.  Documents she submitted to the IJ confirm that she reentered the country on March 17, 2001, under her grant of advance parole.  Except for this one-day trip after she turned eighteen, Colin-Villavicencio has remained continuously in the United States since she was five years old.

Colin-Villavicencio was placed in removal proceedings in 2015.  Representing herself, Colin-Villavicencio argued that she "qualif[ied] for U.S. citizenship through [her] mother" because her mother naturalized before she turned eighteen.  The government responded that Colin-Villavicencio's application for adjustment of status "was

never adjudicated, never completed," and that she "never became a lawful permanent resident.  Thus, she cannot be a United States citizen."

At the time, the controlling precedent in our circuit was *Romero-Ruiz v. Mukasey*, 538 F.3d 1057 (9th Cir. 2008), which held that the child of a naturalized citizen cannot derive citizenship from the naturalized parent unless the child resides in the country and has LPR status at the time the parent naturalizes.  *Id.* at 1063.   The IJ in Colin-Villavicencio's case agreed with the government and told her that the "evidence does not show that you were a lawful permanent resident."    Applying *Romero-Ruiz*, the IJ explained that "[i]f you were a lawful permanent resident and your mother had naturalized, then you may have a claim to citizenship.  But I don't find that the evidence shows that you were a lawful permanent resident at that time."  Based solely on her lack of LPR status, the IJ denied Colin-Villavicencio's claim to American citizenship.

The IJ ordered Colin-Villavicencio removed, and she appealed to the BIA.  *Romero-Ruiz* remained the governing precedent when the parties filed their briefs before the BIA. Colin-Villavicencio did not raise her then-doomed citizenship claim in her briefs.  We decided *Cheneau* after briefing in Colin-Villavicencio's appeal to the BIA was completed.    The BIA dismissed Colin-Villavicencio's appeal without addressing *Cheneau* and the citizenship issue.  The present petition followed.

## II.  Discussion

Under 8 U.S.C. § 1432, the now-repealed provision of the Immigration and Nationality Act ("INA") that applies to her case, Colin-Villavicencio had to satisfy three requirements in order to automatically obtain derivative

citizenship based on her mother's citizenship: any one of § 1432(a)(1)–(3), and both § 1432(a)(4) and (a)(5). The parties agree that Colin-Villavicencio satisfied § 1432(a)(4). For the convenience of the reader, I quote again the relevant portions of § 1432(a)(3) and (a)(5):

> **§ 1432.  Children born outside the United States of alien parents; conditions for automatic citizenship**
> (a) A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions:
>
> > . . .
> > (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if . . .
> > (5) Such child . . . of the parent naturalized under clause . . . (3) of this subsection . . thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. § 1432 (repealed in 2000).

## A.  Government's Argument to Us

The government argues to us only that Colin-Villavicencio did not satisfy § 1432(a)(5). In the view of the government, Colin-Villavicencio did not satisfy § 1432(a)(5) because she abandoned her application for

adjustment of status by failing to obtain advance parole before leaving the country.

In holding that Colin-Villavicencio has no viable claim to citizenship, the panel majority does not contend that she failed to satisfy § 1432(a)(5). For good reason, the panel majority is unwilling to embrace the government's argument. The government is clearly wrong.

Colin-Villavicencio legally came to the United States with her mother when she was five years old, and she remained in the United States without interruption until after she turned eighteen. A month before her mother became a citizen, when Colin-Villavicencio was fifteen, she applied for LPR status. Under *Cheneau*, this is sufficient to demonstrate an objective official manifestation of permanent residence and thereby to satisfy § 1432(a)(5).

The government argues that Colin-Villavicencio abandoned her quest for LPR status when, shortly after her eighteenth birthday, she went to Mexico for one day. The premise for the government's argument is that Colin-Villavicencio did not have advance parole status when she went to Mexico. But the government's premise is mistaken. Colin-Villavicencio did, in fact, have advance parole status. The administrative record contains a copy of her grant of advance parole, and the IJ specifically found that she had advance parole. Directly contradicting its argument before our court, the government conceded during Colin-Villavicencio's removal proceedings before the IJ that she did not abandon her application for adjustment of status when she left the country for one day in March 2001.

Further, even if Colin-Villavicencio had not had advance parole status when she went to Mexico, and had thereby "abandoned" her application for LPR status, that would not

matter if she had already become a United States citizen. As just discussed, it is clear that Colin-Villavicencio satisfied § 1432(a)(5) when her mother was naturalized. Colin-Villavicencio automatically became a citizen if, at that time, she satisfied § 1432(a)(3) and (a)(4) in addition to § 1432(a)(5). The government has explicitly conceded that Colin-Villavicencio satisfied § 1432(a)(4), and it has tacitly conceded that she has satisfied § 1432(a)(3). The government has thus effectively conceded that Colin-Villavicencio automatically became a citizen if she satisfied § 1432(a)(5). If she automatically became a citizen when her mother naturalized, later abandoning her attempt to obtain LPR status would be irrelevant, for it would have no effect on her citizenship.

## B. Waiver by the Government

Colin-Villavicencio argues to us that she has satisfied § 1432(a)(3). The government has had ample opportunity to argue that Colin-Villavicencio did not satisfy § 1432(a)(3), but it has failed to do so.

The government's failure to address § 1432(a)(3) cannot have been inadvertent. After oral argument in this case, we asked for two rounds of supplemental briefing directed to Colin-Villavicencio's citizenship claim. In response to our first request for supplemental briefing, the government did not address § 1432(a)(3). Since we recognized that the answer to the citizenship question might depend on whether Colin-Villavicencio satisfied § 1432(a)(1)–(3), we asked for a second round of briefing specifically addressing the question "whether Petitioner has satisfied any of the specific conditions listed at § 1432(a)(1)–(3)." Second Order for Supplemental Briefing, Dkt. 43, at 2. The government *still* did not address § 1432(a)(3). Instead, the government

continued to rely exclusively on its baseless argument that
Colin-Villavicencio failed to satisfy § 1432(a)(5).

In these circumstances, I would hold that the government
has waived any argument based on § 1432(a)(3). That, for
me, is the end of the case.

## C.  The Panel Majority's Decision

Despite the government's clear waiver, the panel
majority denies Colin-Villavicencio's claim of citizenship
by holding that she has failed to satisfy § 1432(a)(3). In
addressing and denying Colin-Villavicencio's argument on
the merits, the panel majority makes two obvious errors. I
take them in order.

### 1.  Failure to Transfer to the District Court

Citizenship (or "nationality") of a person petitioning to
the court of appeals from an order of removal is determined
as follows:

> **(5) Treatment of nationality claims**
> **(A) Court determination if no issue of
> fact**
>       If the petitioner claims to be a
> national of the United States and the court
> of appeals finds from the pleadings and
> affidavits that no genuine issue of
> material fact about the petitioner's
> nationality is presented, the court shall
> decide the nationality claim.
> **(B) Transfer if issue of fact**
>       If the petitioner claims to be a
> national of the United States and the court
> of appeals finds that a genuine issue of

material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim . . . .

**(C) Limitation on determination**

The petitioner may have such nationality claims decided only as provided in this paragraph.

8 U.S.C. § 1252(b)(5).

The panel majority concludes that there are no genuine issues of material fact with respect to Colin-Villavicencio's nationality claim. Based on this conclusion, it holds that 8 U.S.C. § 1252(b)(5) instructs our court rather than the district court to rule on the question of citizenship.

The panel majority's conclusion is clearly wrong. Based on its understanding of Mexican law, the panel majority concludes that there are no genuine issues of material fact as to whether Colin-Villavicencio's paternity was "established by legitimation" for purposes of § 1432(a)(3). As I will explain in the next section, it is not at all clear that the panel majority properly understands Mexican law with respect to "legitimation" as it relates to § 1432(a)(3). But even if the panel majority were right about Mexican law and right about that law's application to Colin-Villavicencio, further material factual questions still would require us to transfer this case.

First, it is not clear from the record whether Colin-Villavicencio's father naturalized. If he naturalized, she is a

citizen under § 1432(a)(1) regardless of whether she satisfies § 1432(a)(3).  The panel majority says it is clear that Colin-Villavicencio's father did not naturalize because she stated during her removal proceedings before the IJ that she "believe[d]" he obtained LPR status but did not naturalize.  But Colin-Villavicencio had no reason at the time to find conclusive information about whether her long-absent father had naturalized.  This was so because her citizenship claim could not survive *Romero-Ruiz* regardless of her father's naturalization status.  She has not conceded in her briefing to us that her father did not naturalize.

Second, it is not clear from the record whether Colin-Villavicencio's parents were ever married.  We know that they were separated.   If they were married and then separated, Colin-Villavicencio is a citizen under the first clause of § 1432(a)(3) based on the "legal separation" of her parents, regardless of whether she satisfies the second clause of § 1432(a)(3).  Mexico recognizes common law marriages. *Camposeco-Montejo v. Ashcroft*, 384 F.3d 814, 817 (9th Cir. 2004).  Our circuit has left open the question whether a "de facto union[]" that is "roughly comparable to the concept of common law marriage" is a sufficient "legal relationship" to satisfy the first clause of § 1432(a)(3).  *Giha v. Garland*, 12 F.4th 922, 933–34 (9th Cir. 2021).  There is no reason to think Colin-Villavicencio was expressing an expert opinion about the status of her parents' relationship under Mexican law, for purposes of the first clause of § 1432(a)(3), when she stated in her testimony that her parents were not married.

Other circuits faced with similar statements by petitioners have allowed those petitioners to present evidence showing that their parents' relationship qualified as a *de facto* union, recognizing that the petitioners "may not have understood" that marriage for purposes of § 1432(a)(3)

"included *de facto* marriages." *Espichan v. Att'y Gen.*, 945 F.3d 794, 799–800 (3d Cir. 2019). The majority purports to distinguish *Espichan* because the petitioner in that case presented evidence to the immigration judge showing that his parents had a *de facto* marriage. Maj. Op. at 14. That is precisely the point. The only difference between *Espichan* and this case is that Colin-Villavicencio has never, until now, had reason to clarify her parents' legal status. She had no reason to present such evidence during her removal proceedings because her claim was barred by *Romero-Ruiz*. Now that it is relevant, she should have an opportunity to present that evidence to the district court.

## 2. Misunderstanding of Relevant Law

Instead of transferring this case for determination of the factual issues just described, the panel majority decides those factual questions itself. It then addresses the legal merits of Colin-Villavicencio's claim under § 1432(a)(3). The panel majority concludes that Colin-Villavicencio's paternity was "established by legitimation" within the meaning of § 1432(a)(3), and then it holds that she is not an American citizen because she has not satisfied that subsection.

The majority's conclusion that Colin-Villavicencio's paternity was "established by legitimation" rests entirely on its reading of a three-page document describing, in summarized form, portions of the family law of Baja California, Mexico, as that law existed nine years before Colin-Villavicencio was born. *See* Norma C. Gutiérrez, "Baja California, Mexico: Parentage, Filiation, and Paternity Laws" (March 2004). The author of the document is described as a "Senior Research Specialist" at the United

States Library of Congress.  A caution at the beginning of the document states:

> This report is provided for reference purposes only.  *It does not constitute legal advice* and does not represent the official opinion of the United States Government.  The information provided reflects research undertaken as of the date of writing.  It has not been updated.

*Id.* at unnumbered page (emphasis added).

Relying on the "legal advice" disclaimed by the document, the majority concludes that Colin-Villavicencio has not satisfied § 1432(a)(3).  The document appears nowhere in the record or briefing in this case.  It was never presented to the IJ, to the BIA, or to our court.  No party has provided argument about the meaning or applicability of the document.  As far as I am aware, no party has ever even seen the document.  In other words, the sole basis for the panel majority's legal analysis is a three-page document the panel majority found on the internet, a document that explicitly warns it "does not constitute legal advice."

Even if the "legal advice" in the document is accurate (which it may or may not be), it is not clear that the document uses the term "legitimation" in the way that term is used in § 1432(a)(3).  To add to the difficulty, "legitimation" is a term of art in the INA, and the BIA has interpreted the term to mean different things in different places in the statute.  As used in the definition of "child" in 8 U.S.C. § 1101(c)(1), the BIA has held that the child of an unmarried couple is "legitimate" as long as he or she was born in a country that had eliminated legal distinctions between children based on the marital status of their parents.  *Matter of Cross*, 26 I. &

N. Dec. 485, 492 (BIA 2015).  But "legitimation" as used in § 1432(a)(3) requires more:  "[W]here a jurisdiction requires an affirmative act to legitimate an out-of-wedlock child, paternity is not established without the requisite act, even if the jurisdiction has enacted a law to place children on equal footing without regard to the circumstances of their birth." *Id.* at 490.  That is the relevant definition of "legitimation" for Colin-Villavicencio's claim.

The document relied upon by the majority states that Baja California, Mexico, is a jurisdiction where children are placed on equal legal footing "regardless of whether they were born within a union not bound by marriage or within a marriage."  Gutiérrez, *supra*, at 1.  The document also states that for children born outside of marriage "to have their rights implemented," they need to "have their parentage established." *Id.*  The parentage of the mother is established by the "mere fact of birth." *Id.*  The parentage of the father can be established by "voluntary acknowledgment of the child." *Id.*

The document states that a father's voluntary acknowledgment may be done in any of five specified ways. The document does not specify what "rights " may be (or can only be) "implemented" in the manner it describes.  The majority's decision rests on one line in the document stating that this "acknowledgment" can be done, among other ways, "[o]n the birth record." *Id.*; *see* Maj. Op. at 15–16.

It is far from clear whether the "acknowledgment" the document describes is the same as "legitimation" for purposes of § 1432(a)(3).  The actual Baja California legal code that is cited by the document uses the term "*reconocimiento*," or "recognition," to describe this process, not "legitimation."  Código Civil [CC], art. 366, Periódico

Oficial [PO] 31-01-1974.  Courts in our circuit have concluded that "[t]he word 'by' [in § 1432(a)(3)] indicates that legitimation must be the means through which paternity was established" and that "[p]aternity established in some other way [is] insufficient to defeat citizenship." *Flores-Torres v. Holder*, 680 F. Supp. 2d 1099, 1105 (N.D. Cal. 2009); *see also Anderson v. Holder*, 673 F.3d 1089, 1099 n.9 (9th Cir. 2012) (". . . *Flores-Torres* meant that the petitioner's paternity had to have been established by legitimation, as opposed to the alternative mechanism of acknowledgment, for him to fall within the terms of the statute.").  Given the complexity of this issue, it is little wonder that the document contains an explicit disclaimer saying it is "provided for reference purposes only" and "does not constitute legal advice and does not represent the official opinion of the United States Government."

To justify its reliance on the document it found on the internet, the panel majority cites *Iracheta v. Holder*, 730 F.3d 419 (5th Cir. 2013), as having considered similar analyses of Mexican law.  Maj. Op. at 16 n.6.  This case is light years away from *Iracheta*.  The documents in *Iracheta* were presented by the parties, and the Fifth Circuit heard "the arguments of the parties regarding their meaning." *Iracheta*, 730 F.3d at 424.  The documents in *Iracheta* specifically described the law as it stood at the time of the petitioner's birth, unlike the document on which the panel majority relies.  *See id.* at 425.

The panel majority also relies on *Brown v. Holder*, 763 F.3d 1141 (9th Cir. 2014), Maj. Op. at 7, 18 n.7, but *Brown* provides even less support than *Iracheta*.  The panel in *Brown* granted the petitioner's request for judicial notice, citing the statutory provision that allows us to consider the parties' "pleadings and affidavits" in addition to the

administrative record when deciding whether to transfer a citizenship claim. *Brown*, 763 F.3d at 1145 n.2 (citing 8 U.S.C. § 1252(b)(5)); *see also Batista v. Ashcroft*, 270 F.3d 8, 13 (1st Cir. 2001) ("[W]hen an alien claims citizenship in the petition for review, we are required to determine on the basis of the 'pleadings and affidavits' whether there is a genuine issue of material fact sufficient to transfer the case to the district court for a new hearing and decision."); *Brown*, 763 F.3d at 1145 n.2 (citing *Batista*). But no party has sought judicial notice of the materials that the panel majority found on its own and upon which it now relies. Nor do the materials appear anywhere in the parties' "pleadings and affidavits."

To reach a reasoned conclusion about how, if at all, the document upon which the majority relies is pertinent to "legitimation" as that term is used in § 1432(a)(3), we would need, at minimum, briefing, argument, and evidence from the parties on that question. Better still would be expert opinions about the actual legitimation process under Baja California law in 1983.

The panel majority concludes it does not need anything more than its own assessment of a three-page document that expressly disclaims reliability because it claims our precedent makes clear that Colin-Villavicencio's paternity was established by legitimation. *See* Maj. Op. at 16–17. The cases it cites are not just unhelpful to the panel majority; they are directly contrary to its position. All of the panel majority's cases state the same basic rule: When a jurisdiction does not require any affirmative act by the father establishing parentage in order for a child of an unmarried couple to have the same legal rights as children of married couples, children of unmarried couples automatically meet the "legitimation" requirement of § 1432(a)(3). *See, e.g.*,

*Romero-Mendoza v. Holder*, 665 F.3d 1105, 1109 & n.2 (9th Cir. 2011). But when a jurisdiction *does* require an affirmative act by the father, legitimation is *not* automatic. *See, e.g.*, *Anderson*, 673 F.3d at 1099 n.9 ("Legitimation need not *always* require[] some formal legal act; the question is whether or not the law of the governing jurisdiction requires such a formality." (emphasis in original)); *Miranda v. Sessions*, 853 F.3d 69, 74 (1st Cir. 2017) (citing *Cross*, 26 I. & N. Dec. at 490).

The document on which the panel majority relies says that Baja California in 1974 was a jurisdiction where paternity was *not* established absent an affirmative act by the father. Indeed, the line of the report on which the majority's entire reasoning depends describes one kind of affirmative act that the report says established paternity at that time. *See* Maj. Op. at 15–16. What remains unclear is (1) whether the document's legal analysis is correct, (2) whether the document assesses the relevant law, and (3) whether establishing paternity by what the document calls "acknowledgment" and what the actual Mexican law it cites calls "*reconocimiento*" is the same as establishing paternity "by legitimation," as required by § 1432(a)(3). None of our circuit's cases answer those questions.

Without precedent from our court to justify its approach, the panel majority turns again to the Fifth Circuit's decision in *Iracheta*. Maj. Op. at 17. Once again, the cases the panel majority cites simply highlight its errors. *Iracheta* explained that the civil code of Tamaulipas, the Mexican jurisdiction where the petitioner in that case was born, had entirely separate chapters "for 'legitimation' and 'acknowledgment' of children." *Iracheta*, 730 F.3d at 425. The Fifth Circuit recognized that "the textual distinction between 'legitimation' and 'acknowledgment' in the Tamaulipas

Code is not necessarily without difference." *Id.* at 426. But ultimately it held that under the particularities of Tamaulipas law and the *Iracheta* panel's interpretation of § 1432(a)(3), acknowledgment by the father was sufficient for the child's paternity to be "established by legitimation." *See id.* at 425–26.

No case from our circuit has either reached that conclusion about Baja California law or has adopted *Iracheta*'s expansive interpretation of § 1432(a)(3). And the Fifth Circuit's reading of the statute is in tension with the statutory text requiring a child's paternity to be established by "legitimation"—a term that, as *Iracheta* makes clear, often carries a specific legal meaning distinct from other methods of establishing parentage. Supreme Court case law and other provisions of the INA also distinguish legitimation from acknowledgment. *See* 8 U.S.C. § 1409(a)(4); *see also Nguyen v. I.N.S.*, 533 U.S. 53, 71 (2001) (under § 1409(a)(4) "a father who has not legitimated his child by formal means need only make a written acknowledgment of paternity under oath in order to transmit citizenship to his child"). Others of our sister circuits have done so too. *See, e.g.*, *Tineo v. Att'y Gen.*, 937 F.3d 200, 215 (3d Cir. 2019); *see also id.* at 220 (Smith, C.J., concurring in part) ("Section 1432 is actually more difficult to satisfy than the statute in *Nguyen* because § 1432 is limited to legitimation under local law, while the statute in *Nguyen* permitted paternal acknowledgment via two additional methods . . . .").

## Conclusion

The decisive question in this case is whether Colin-Villavicencio has satisfied § 1432(a)(3).

Colin-Villavicencio argues that she has satisfied § 1432(a)(3). Despite having been specifically directed to

address § 1432(a)(3), the government failed to do so. I would therefore hold that the government has waived any argument that Colin-Villavicencio has failed to satisfy § 1432(a)(3). That should be the end of the case.

Without acknowledging the fact that the government has waived any argument under § 1432(a)(3), the panel majority holds that Colin-Villavicencio has failed to satisfy § 1432(a)(3). In so doing, the panel majority errs.

First, the panel majority fails to comply with 8 U.S.C. § 1252(b)(5), which requires us to transfer a citizenship claim to district court unless it is clear "from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented."

Second, the panel majority violates the rule of party presentation—the basic principle that "we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). It is not our function to raise and argue claims on the government's behalf. The concurring opinion accuses me of also violating this rule by identifying the problems with the panel majority's reasoning. To state what should be obvious: Pointing out the flaws in the panel majority's made-up argument for the government is not the same as the panel majority's error in making up that argument in the first place. Colin-Villavicencio has never had a chance to respond to the argument the panel majority advances for the government because the government has never made that argument. By contrast, the government has had plenty of opportunity to come up with the argument the panel majority raises on its behalf, but it has failed to say anything about § 1432(a)(3) even when we ordered it to do so.

Third, the panel majority also violates the rule that "an appellate court does not decide issues" that no other court has decided first. *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1110 (9th Cir. 2020). That rule includes an exception for "purely legal issue[s]" when all of the material facts are clear from the record, but this case does not come close to satisfying that standard. *See id.* at 1111 ("[N]ot only must the record be complete, but it must be clear that a litigant could not 'have tried his case differently either by developing new facts in response to or advancing distinct legal arguments against the issue.'" (quoting *United States v. Patrin*, 575 F.2d 708, 712 (9th Cir. 1978))).

Fourth, the panel majority reaches a decision on the merits that is, to say the least, unsupported by the materials before it. The document upon which the panel majority relies expressly disclaims reliability, and the analysis in the document may not even apply to the question before us.

To state it plainly, the panel majority denies Colin-Villavicencio's claim of citizenship based on an argument that the government has never made and based on extra-record materials that no party has had the opportunity to address or perhaps even seen. The panel majority acts as both a government advocate and a district court factfinder. And it affirms an order of removal from the United States of a person who may be an American citizen.

I dissent.